UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

KEMPEN INTERNATIONAL FUNDS
(KEMPEN INTERNATIONAL FUNDS -
MERCLIN GLOBAL EQUITY), KEMPEN
INTERNATIONAL FUNDS (KEMPEN
INTERNATIONAL FUNDS - MERCLIN
PATRIMONIUM), and MERCLIN
INSTITUTIONAL FUND (MERCLIN
INSTITUTIONAL EQUITY FUND DBI-
RDT), Individually and on Behalf of All Others
Similarly Situated,

              Plaintiffs,

     vs.

SYNEOS HEALTH, INC., ALISTAIR
MACDONALD, MICHELLE KEEFE, PAUL
COLVIN, and JASON MEGGS,

              Defendants.

———————————————————— x

: Civil Action No. 1:23-cv-08848-AS
:
: PLAINTIFFS' SUR-REPLY
: MEMORANDUM OF LAW IN FURTHER
: SUPPORT OF THEIR OPPOSITION TO
: DEFENDANTS' MOTION TO DISMISS
: THE AMENDED COMPLAINT

The Complaint[1] presents a compelling, cogent, and particularized account of Defendants' securities laws violations, detailing their campaign to convince investors, through untrue statements of historical and present fact, that Syneos's clinical business was thriving and that their backlog was healthy and growing. Plaintiffs' detailed allegations more than satisfy all of the PSLRA's pleading requirements.

Defendants never rebut the totality of Plaintiffs' falsity and scienter allegations. Rather, they challenge statements taken out of context, quibble with how allegations and documents might be interpreted differently, and challenge portions of isolated allegations arguing that, when viewed alone, they are insufficient to support a claim. Defendants similarly ignore or recast allegations which explain why they falsely inflated the Company's performance metrics: because Defendants knew that Syneos was plagued by undisclosed operational problems, quality issues, service failures, and data limitations that were preventing the Company from winning and retaining business. ¶¶50-70, 252-253. Yet, having chosen to speak about these performance metrics, Defendants were obligated—but failed—to disclose how and why the metrics were inflated. And, in the end, they and other insiders took full advantage of the manipulated performance metrics and artificially inflated share price by unloading their Syneos stock for billions in illicit trading proceeds. ¶¶265-306.

The Court "must accept all factual allegations in the complaint as true and must consider the complaint in its entirety," "'draw[ing] all reasonable inferences in favor of the plaintiff.'"[2] *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150 (2d Cir. 2021); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). As to scienter, the relevant inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual

---

[1] Defined terms have the same meaning as set forth in the Complaint and ECF No. 49 ("Opposition" or "Opp."). All "¶_" and "¶¶__" refer to the Complaint.

[2] All citations are omitted unless otherwise noted.

allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323 (emphasis in original). Because the Complaint adequately pleads falsity and scienter—the only elements Defendants challenge—Defendants' motion should be denied.

**The Challenged Statements Are Actionable**. Defendants argue that the Court "must" entirely ignore all allegations sourced from unidentified former Syneos insiders. ECF No. 52 ("Reply" or "Rep.") at 1-3. Defendants are wrong and their conclusory assertion that Plaintiffs "misread[]" *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463 (S.D.N.Y. 2004) (Rep. at 2-3 n.2), is misplaced. Plaintiffs are not required to reveal or "provide a description" of confidential sources. *See id.* at 478. Rather, Plaintiffs must simply "'provide an adequate basis for believing that the defendants' statements were false.'" *Id.* at 479 (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)). Plaintiffs have done so here.[3]

Defendants' further assertion, that their post-Class Period admissions that the Company continued to suffer from "competitive gaps" (¶69) and a declining "win rate" (¶68) do not support the Complaint's allegations that Syneos was unable to compete and win business during the Class Period (Rep. at 3), should be rejected. "'[P]laintiffs may rel[y] on post-class period [statements] to confirm what a defendant should have known during the class period.'" *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 1223844, at *12 (S.D.N.Y. Mar. 27, 2013) (the "opposite result would reward defendant for successful concealment. Allegations in a complaint, including knowledge which the defendants knew or should have known, should be viewed together."). Further, the Complaint

---

[3] The allegations are supported by internal observations of meetings and conference calls (¶¶256-263), internal Syneos documents (¶¶51-53, 65-66; *see also* ECF No. 48-61), statements by the Company's own executives (¶¶58, 63, 68-70, 241-245, 248-250), and public documents such as SEC filings and analyst commentary (¶¶95, 246, 277-306, 314). *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 358-59 (S.D.N.Y. 2003) ("the cumulative effective of the evidence is important"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) ("this Court is aware of no authority requiring confidential witness allegations").

alleges—notwithstanding Defendants' persistent attempt to restate the facts—that Syneos's quality and customer issues were not "subsequent events," but were prevalent throughout the Class Period. *See, e.g.*, ¶¶51-53, 59-66. Further, the magnitude of Syneos's problems and business deterioration makes Defendants' claim of surprise "'less credible.'" *See In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016). Indeed, analysts were "flummoxed" by the magnitude of Syneos's "[u]nprecedented" business decline that they had "[n]ever seen" before. ¶314.

Defendants' assertions that their false statements are puffery or forward-looking statements protected by the safe harbor both fail for the same reason: Defendants ignore the actual statements alleged to be false, the proper context in which they were made, and many of the Complaint's allegations entirely. *See* ECF No. 49-4. For example, Defendants' statements highlighting their "record backlog" and falsely celebrating double digit growth as reflected in their backlog "'are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading,'" and they do not constitute puffery. *See Ollila v. Babcock & Wilson Enters., Inc.*, 2018 WL 792069, at *5 (W.D.N.C. Feb. 8, 2018).

Defendants' false statements regarding the Company's backlog are also not protected by the safe harbor or Syneos's risk disclosures. When Defendants emphasized Syneos's "record backlog," record "SMID" performance, strong gross awards, and reported the book-to-bill ratios from the preceding period (*e.g.*, ¶¶110, 113), they were describing *present* conditions. Defendants' suggestion that backlog is an indicator of future revenue and magically becomes forward-looking (Rep. at 6), ignores that their statements about the *present* condition of the performance metrics were provided to and exhaustively discussed with securities analysts after each reporting period separately and not as part of any projection. *See, e.g.*, ¶176 ("Clinical . . . delivered another quarter of strong awards, powering record backlog levels"). Moreover, the safe harbor does not apply because the risks to backlog and performance metrics that Defendants may have warned of had already been realized, rendering the

cited risks "misleading in light of historical fact." *Slayton v. Am. Express Co.*, 604 F.3d 758, 770 (2d Cir. 2010); *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 228 (S.D.N.Y. 2023) ("warned-of prospective risks had occurred").

***The Complaint Pleads Scienter***. Plaintiffs have alleged compelling facts showing Defendants' conscious misbehavior or recklessness and that they had the motive and opportunity to commit the fraud. *See* ¶¶251-315. As explained in the Opposition at 20, the Second Circuit has found that "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308; *see id.* at 311-12. Here, Plaintiffs allege that: (i) each Defendant specifically knew, among other things, that dissatisfied clients had already pulled $500 million in projects out of the Syneos pipeline and another $1 billion was at risk from other clients (¶¶49, 51-52, 64, 252-253); and (ii) Defendants directed the masking of the loss of new business and were warned that these practices "could amount to fraud" (¶¶71-86, 265-276). Plaintiffs explain who (each individual defendant) knew what (large business awards were placed "on hold" or were "at risk" due to pervasive quality and service problems), when they learned it (by early 2021), and how (*e.g.*, through the ELT meetings and presentations). *E.g.*, ¶¶49, 51-54, 65-66, 71, 74, 81. Plaintiffs also identify who sanctioned the backlog manipulation. *E.g.*, ¶74; *see* Opp. at 20-21.

There is also an adequate basis to infer scienter, despite Defendants' claims to the contrary. Rep. at 9. Indeed, Macdonald and Meggs admitted that they had "good" visibility into the Company's backlog and new clinical business (¶257), that they repeatedly confirmed their knowledge in calls with investors (¶¶258-261), and that the alleged fraud concerned Syneos's core operations (¶264), all of which further support the strong inference of scienter. *Compare* ¶¶40, 256-264, *with* Memorandum Opinion & Order at 7-9, *Stadium Cap. LLC v. Co-Diagnostics Inc., et al.*, No. 1:22-cv-06978-AS (S.D.N.Y. Feb. 5, 2024), ECF No. 42 ("*Co-Diagnostics* Order").

- 4 -

Defendants' new argument—that the January 2021 ELT presentation does not show their knowledge of the issues that caused Plaintiffs' losses in 2022—also fails. Rep. at 8; ¶¶51-53, 65-66. First, scienter does not thereafter dissipate with the passage of time—whether a day, a month, or a quarter—and Defendants do not thereafter become unaware of the adverse undisclosed information that conflicts with their public statements. Besides, Defendants admitted after the Class Period that the undisclosed adverse facts that existed at the time of their January 2021 presentation persisted throughout the Class Period. *Compare, e.g.*, ¶¶241-245, 248-250 (Defendants knew Syneos's clinical business was plagued by technological and operational issues), *with* ¶¶58, 68-70, 243-250 (Syneos knew it experienced undisclosed operational turmoil over the preceding 18 months because it could not provide critical clinical trial services). Second, the January 2021 ELT presentation addresses Syneos's operational and technical problems and the loss of substantial business. The Complaint explains how these issues persisted and began to be revealed in February 2022, when Defendants disclosed that a portion of Syneos's backlog had been larded with uncollectable expenses to hide the loss of clinical business. ¶¶16, 209-219. The "exposure of the . . . fraud need not occur in a single, all-encompassing . . . disclosure;" instead, the truth can be revealed through a series of partial disclosures. *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *31 (D.N.J. Aug. 8, 2011).

Defendants contend that their stock holdings increased, but only if zero-dollar grants of vested and unvested RSUs are counted. Rep. at 9. But this supports, rather than negates, an inference of scienter. *See Co-Diagnostics* Order at 9-10 (selling shares obtained for free shows that defendants may have benefitted from the inflated price); *see also* Opp. at 23-25.

DATED:  February 9, 2024

s/ Henry Rosen
HENRY ROSEN

Patrick W. Daniels (admitted *pro hac vice*)
Henry Rosen (admitted *pro hac vice*)
Brian O. O'Mara (admitted *pro hac vice*)
Steven M. Jodlowski (admitted *pro hac vice*)
Caroline M. Robert
Hani Y. Farah (admitted *pro hac vice*)
**DɪCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA  92121
Tel.:  619-923-3939
pwdaniels@dicellolevitt.com
hrosen@dicellolevitt.com
briano@dicellolevitt.com
stevej@dicellolevitt.com
cmrobert@dicellolevitt.com
hfarah@dicellolevitt.com

Greg G. Gutzler
**DɪCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY  10017
Tel.:  646-933-1000
ggutzler@dicellolevitt.com

Adam J. Levitt
**DɪCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, IL  60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com

Roxana Pierce (admitted *pro hac vice*)
**DɪCELLO LEVITT LLP**
1101 17th Street, NW, Suite 1000
Washington, DC  20036
Tel.:  202-975-2288
rpierce@dicellolevitt.com

*Counsel for Lead Plaintiffs*

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 9, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

S/ HENRY ROSEN
HENRY ROSEN

**DɪCELLO LEVITT LLP**
4747 Executive Dr., Suite 240
San Diego, CA  92121
Telephone: 619-963-2406
E-mail: hrosen@dicellolevitt.com