# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN GLOBAL EQUITY), KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN PATRIMONIUM), and MERCLIN INSTITUTIONAL FUND (MERCLIN INSTITUTIONAL EQUITY FUND DBI-RDT), Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:23-cv-08848-AS<br><br>ORAL ARGUMENT REQUESTED |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| SYNEOS HEALTH, INC., ALISTAIR MACDONALD, MICHELLE KEEFE, PAUL COLVIN, and JASON MEGGS, | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

BRIAN T. FRAWLEY
BENJAMIN R. WALKER
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000

*Attorneys for Defendants Syneos Health, Inc.,
Alistair Macdonald, Michelle Keefe, Paul Colvin
and Jason Meggs*

June 14, 2024

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

  A. The Parties .................................................................................................2

  B. The Company's Financial Reporting During the Class Period ...............................3

  C. The Company Successfully Navigates the COVID-19 Pandemic in 2020 ..............4

  D. Syneos Posts Strong 2021 Results, Which Are Nowhere Challenged ....................5

  E. Syneos Promptly Discloses Disappointing Developments in 2022 ........................6

ARGUMENT ............................................................................................................................8

I. THE SAC FAILS TO PLEAD SECURITIES FRAUD WITH PARTICULARITY ..........8

  A. The SAC Does Not Follow the Court's Instructions ................................................8

  B. The SAC Systematically Fails to Particularize Its Allegations That the
    Challenged Statements Were Fraudulent .................................................................10

II. PLAINTIFFS PLEAD NO ACTIONABLE MISSTATEMENT OR OMISSION ..........14

  A. Plaintiffs Allege No Misstatements of Fact ............................................................14

  B. The Challenged Statements Are Not Actionable ....................................................15

III. THE SAC FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO
  THE REQUISITE COGENT AND COMPELLING INFERENCE OF FRAUD .............17

  A. Plaintiffs Plead No Cognizable Motive for Defendants to Commit Fraud ............17

  B. Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness ........................19

CONCLUSION ........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altayyar* v. *Etsy, Inc.*,
242 F. Supp. 3d 161 (E.D.N.Y. 2017) ...............................................................................14

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...................................................................................................8

*Batson* v. *Rim San Antonio Acquisition, LLC*,
2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016) ...................................................................10

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)...........................................................................18, 20

*In re Citigroup, Inc. Sec. Litig.*,
330 F. Supp. 2d 367 (S.D.N.Y. 2004)................................................................................15

*City of Coral Springs Police Officers' Ret. Plan* v. *Farfetch Ltd.*,
565 F. Supp. 3d 478 (S.D.N.Y. 2021)................................................................................19

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Reckitt Benckiser Grp. PLC*,
587 F. Supp. 3d 56 (S.D.N.Y. 2022)..................................................................................16

*Denny* v. *Barber*,
576 F.2d 465 (2d Cir. 1978)...............................................................................................14

*Denny* v. *Canaan Inc.*,
2023 WL 2647855 (S.D.N.Y. Mar. 27, 2023) ...................................................................20

*In re DraftKings Inc. Sec. Litig.*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023).................................................................................19

*ECA, Loc. 134 IBEW Joint Pension Tr.* v. *JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..........................................................................................11, 17

*Frankfurt-Trust Inv. Luxemburg AG* v. *United Tech. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018)................................................................................20

*Gagnon* v. *Alkermes PLC*,
368 F. Supp. 3d 750 (S.D.N.Y. 2019)................................................................................18

*In re Gilat Satellite Networks, Ltd.*,
2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ..................................................................12

*Glaser* v. *The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................................12

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund* v. *Royal Bank of Scotland Grp., PLC*,
783 F. 3d 383 (2d Cir. 2015)...............................................................................................16

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001)...........................................................................................17, 19

*Kempen Int'l Funds* v. *Syneos Health, Inc.*,
2024 WL 1805011 (S.D.N.Y. Apr. 25, 2024)..............................................................1, 6, 8, 9

*Lau* v. *Opera Ltd.*,
527 F. Supp. 3d 537 (S.D.N.Y. 2021)...................................................................................16

*Lipow* v. *Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015)...................................................................................20

*Long Miao* v. *Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................................11

*Lopez* v. *Ctpartners Exec. Search, Inc.*,
173 F. Supp. 3d 12 (S.D.N.Y. 2016).....................................................................................15

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)....................................................................................18

*Macquarie Infrastructure Corp.* v. *Moab Partners, L.P.*,
601 U.S. 257 (2024)........................................................................................................8, 10

*Malin* v. *XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007)...................................................................................18

*In re Merrill Lynch Auction Rate Sec. Litig.*,
851 F. Supp. 2d 512 (S.D.N.Y. 2012)...................................................................................14

*Novak* v. *Kasaks*,
216 F.3d 300 (2d Cir. 2000).........................................................................................1, 10, 12, 19

*In re Pareteum Sec. Litig.*,
2020 WL 3448526 (S.D.N.Y. June 23, 2020) .........................................................................9

*In re PXRE Grp., Ltd. Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009)...................................................................................19

*Rombach* v. *Chang*,
355 F.3d 164 (2d Cir. 2004)...........................................................................................9, 16

*San Antonio Fire & Police Pension Fund* v. *Dentsply Sirona Inc.*,
    2024 WL 1898512 (S.D.N.Y. May 1, 2024) ........................................................8, 17, 20

*In re Skechers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020).................................................................................17

*Steamfitters Loc. 449 Pension Plan* v. *Skechers U.S.A., Inc.*,
    412 F. Supp. 3d 353 (S.D.N.Y. 2019).................................................................................15

*Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund* v.
    *Olo Inc.*,
    2023 WL 8287681 (S.D.N.Y. Nov. 30, 2023).....................................................................15

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................2, 17

*TufAmerica, Inc.* v. *Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013)................................................................................13

*Tung* v. *Bristol-Myers Squibb Co.*,
    412 F. Supp. 3d 453 (S.D.N.Y. 2019)................................................................................18

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................................20

*Wyche* v. *Advanced Drainage Sys., Inc.*,
    710 F. App'x 471 (2d Cir. 2017) .......................................................................................17

**Statutes**

Private Securities Litigation Reform Act of 1995 (PSLRA),
    15 U.S.C. § 78u–4 & § 78u–5............................................................................... *passim*

**Other Authorities**

Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 .........................................................8, 10

## TABLE OF ABBREVIATIONS[1]

| | |
|---|---|
| Class Period | Putative class period of September 9, 2020 through November 3, 2022 |
| CRO | Contract research organization |
| CW | Confidential Witness |
| GCS | Global Client Solutions |
| ELT | Executive Leadership Team |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78qq |
| FAC | [First] Amended Complaint for Violation of the Federal Securities Laws (ECF No. 35) |
| Individual Defendants | Alistair Macdonald, Michelle Keefe, Paul Colvin, and Jason Meggs |
| Item 303 | Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 & 78u-5 |
| Rule 8 | Fed. R. Civ. P. 8 |
| Rule 9(b) | Fed. R. Civ. P. 9(b) |
| Rule 10b-5 | SEC Rule 10b-5, 17 C.F.R. § 240.1b-5 |
| SAC or Complaint | Second Amended Complaint for Violation of the Federal Securities Laws (ECF No. 57) |
| SEC | U.S. Securities and Exchange Commission |
| Section 10(b) | Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) |
| Section 20(a) | Section 10(b) of the Exchange Act, 15 U.S.C. § 78t(a) |
| SMID | Small to mid-sized |
| Syneos or the Company | Syneos Health, Inc. |

---

[1] Unless otherwise noted, capitalized terms not otherwise defined herein have the same meaning ascribed to them as in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint (ECF No. 47).

Defendants respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

In previously dismissing this action without prejudice, this Court laid out a clear roadmap for Plaintiffs to follow in amending their defective complaint. *Kempen Int'l Funds* v. *Syneos Health, Inc.*, 2024 WL 1805011, at *2 (S.D.N.Y. Apr. 25, 2024). But the SAC largely disregards the Court's guidance, doubling down on Plaintiffs' improper "puzzle pleading" approach with equally deficient allegations that continue to "flatten[] the timeline" of the 26-month Class Period and ignore that "[t]he company's performance—and what Defendants knew about it—was changing all the time." *Id.* at *1–2. As a result, the SAC, like the FAC, does not satisfy the PSLRA's particularization requirements and should be dismissed again, this time with prejudice.

In addition to disregarding the Court's admonitions, Plaintiffs persist in their refusal to comply with the PSLRA's mandate "to state with particularity all facts" that form the basis of their "information and belief" allegations that Defendants' public statements were supposedly inconsistent with the true state of affairs at Syneos. 15 U.S.C. § 78u-4(b)(1). The vast majority of Plaintiffs' conclusory proclamations about internal information purportedly contrary to Defendants' statements are supported by no particularized facts. This is impermissible under Second Circuit law. *See*, *e.g.*, *Novak* v. *Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (plaintiffs must specify the "document[s]" and/or "personal sources of the plaintiffs' beliefs").

Beyond this, the SAC does not plausibly allege any actionable misstatements. Plaintiffs do not challenge even one item of Syneos' reported revenues, expenses or earnings. Read charitably, the SAC alleges that, for over two years (during the COVID-19 pandemic), Defendants failed to volunteer self-criticism about emerging operational problems when *accurately* reporting historical financial results amid upbeat statements about growth and rosy

prognostications of continued success.  Plaintiffs cannot transform these oral comments—many of which concern Syneos' reported "backlog," which the SAC admits is a projection of "anticipated future revenue" from expected business in the pipeline (SAC ¶¶ 3, 41), and similar metrics—into misstatements, including because the actual statements (i) are not plausibly alleged to have been inaccurate when made, and (ii) are inactionable projections, opinions, or puffery.

The SAC also fails to plead particularized allegations supporting a strong inference of scienter with facts demonstrating a "cogent" and "compelling" inference of fraud.  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).  Plaintiffs point to the Individual Defendants' sales of Syneos stock during the Class Period as evidencing a motive to defraud, but this is a diversion.  The trade timing does not match up with Plaintiffs' misstatement theories, and courts routinely reject such allegations in the absence of suspicious trading activity not present here.  Plaintiffs' assertions that Defendants knew their public statements were false are rooted in the same deficient allegations of supposedly contrary internal information—most of which is not even alleged to have been provided to the speaker of any challenged statement— underlying their assertions of falsity.  That is not enough under the PSLRA.

In short, the Complaint alleges an unsupported and implausible fraud theory that bears no relation to reality.  In truth, in four of the first six quarters of the putative Class Period, Syneos grew revenues as projected and substantially exceeded its reported guidance.  When Syneos faced headwinds in 2022, it disclosed them, and twice reduced its reported financial guidance.  This case has nothing to do with misstatements or fraud.  Plaintiffs have already had three bites at the apple to try to plausibly allege otherwise.  They should not get a fourth.

## FACTUAL BACKGROUND

### A.      The Parties

Syneos is a leading biopharmaceutical solutions company operating two business

segments, Clinical Solutions and Commercial Solutions. (SAC ¶¶ 2, 38.) The Complaint focuses on Clinical Solutions, which offers global services for the clinical development of diagnostics, drugs, biologics, devices, and digital therapeutics. (Ex. 28 at 70.)[2] Alistair Macdonald served as CEO of Syneos from October 2016 until retiring in April 2022. (SAC ¶ 29.) Michelle Keefe served as CEO from April 2022 until October 2023, and remained a member of the Board of Directors until June 1, 2024. (SAC ¶ 30.) Jason Meggs was CFO from February 2018 until March 2023. (SAC ¶ 31.) Paul Colvin was President of Clinical Solutions and later Chief Business Officer, before departing Syneos in August 2022. (SAC ¶ 32.)

Plaintiffs are Luxembourgish and Belgian investment companies that allegedly purchased shares of Syneos common stock during the Class Period. (SAC ¶ 27.)

**B.      The Company's Financial Reporting During the Class Period**

As a public company during the Class Period,[3] Syneos periodically reported standard financial metrics, including revenue, net income, cash flows, and earnings. (Ex. 10 at 74–91.) Syneos also reported other operating metrics, including "backlog," which consists of "anticipated future revenue from new business awards" that converts to future revenue after work is undertaken and Syneos is paid. (Ex. 10 at 35, 73; *see* SAC ¶ 41.) Another metric Syneos reported was its "reimbursable out-of-pocket expenses," which consist of anticipated future costs that Syneos expects to incur and to be reimbursed by its customers, including fees paid to contractors and staff in connection with future clinical studies. (SAC ¶ 43.) Syneos' fully disclosed practice was to include these expenses in backlog as anticipated revenues. (*Id.*)

Throughout the Class Period, the Company repeatedly emphasized the uncertainty of its backlog projections. In its SEC filings, Syneos warned in bold and italicized text: "***Our backlog***

---

[2] Citations to "Ex. __" refer to exhibits to the accompanying Declaration of Benjamin R. Walker.

[3] On September 28, 2023, Syneos became a private company.

*might not be indicative of our future revenues, and we might not realize all of the anticipated future revenue reflected in our backlog.*" (Ex. 3 at 30; Ex. 10 at 35; Ex. 15 at 28; Ex. 20 at 29; Ex. 24 at 30; Ex. 28 at 36; Ex. 33 at 27; Ex. 36 at 27.) Syneos also cautioned, "We believe that our backlog and net new business awards might not be consistent indicators of future revenue," because projects in backlog "may be canceled or delayed by the customer or regulatory authorities," and backlog therefore "might not be indicative of our future revenues." (Ex. 3 at 30; Ex. 10 at 35, 73; Ex. 15 at 28; Ex. 20 at 29; Ex. 24 at 30; Ex. 28 at 36–37, 72; Ex. 33 at 27; Ex. 36 at 27.) Accordingly, Syneos underscored that "an increase in backlog at a particular point in time does not necessarily correspond directly to an increase in revenues during any particular period, or at all." (Ex. 10 at 35; Ex. 28 at 36–37.)

### C.    The Company Successfully Navigates the COVID-19 Pandemic in 2020

Like many other businesses, Syneos was affected by business disruptions due to the COVID-19 pandemic. (SAC ¶¶ 15, 50.) One initially unexpected but later enduring effect was a reduction in Syneos' reimbursable expenses. The majority of clinical trials, which were conducted in person pre-pandemic, moved to a virtual format, and many continued to be conducted remotely even after social-distancing requirements relaxed. (SAC ¶ 50; Ex. 29 at 5.)

From the very beginning of the Class Period, Syneos informed investors that reductions in reimbursable expenses were negatively impacting its revenues. For example, in an earnings call on October 29, 2020, Mr. Macdonald explained that "[t]otal revenue for the quarter was below our guidance solely due to the slower recovery in reimbursable out-of-pocket expenses," which Mr. Macdonald said "was driven by an increase in virtual operations and a slower recovery in patient enrollment." (Ex. 2 at 2.) Syneos also continually reiterated that backlog has "been and we expect will continue to be affected by the broad effects of the COVID-19 pandemic on the global economy and major financial markets." (Ex. 3 at 30; Ex. 10 at 73; Ex.

15 at 28; Ex. 20 at 29; Ex. 24 at 30; Ex. 28 at 72; Ex. 33 at 27; Ex. 36 at 27.)

To adapt, Syneos facilitated virtual access to clinical sites and instituted various cost containment initiatives. (SAC ¶ 50.) And Syneos was hopeful that the pandemic's effects could be limited and its impacts could be temporary. Syneos, however, made clear that some impacts might be longer-lasting, warning that "[o]ur full service studies as well as our functional service provider offering have been impacted, and we expect them to continue to be impacted." (Ex. 3 at 28.) Like many other businesses, Syneos withdrew its financial guidance for fiscal year 2020 (SAC ¶ 50; Ex. 4 at 5; Ex. 12 at 3), but ultimately ended 2020 with 5.6% year-over-year growth and met its updated guidance (Ex. 4 at 5; Ex. 12 at 3).

### D.    Syneos Posts Strong 2021 Results, Which Are Nowhere Challenged

In November 2021, Syneos announced it had exceeded its earnings guidance for the first three quarters of the year, reporting company-wide increases in revenue between 15.7% and 17.2% and Clinical Solutions growth of between 18.1% and 19.8%, compared to the same period in 2020. (Ex. 25 at 2.) The Company ultimately achieved year-over-year growth of 18%, matching its earnings guidance for 2021. (Ex. 30 at 2.) But Syneos cautioned that "we expect that the COVID-19 pandemic will continue to negatively impact our Clinical Solutions revenue throughout 2021," pointing to "the trend of more remote monitoring visits and delayed patient enrollment, resulting in lower reimbursable out-of-pocket expenses and related revenue as the recovery continues." (Ex. 15 at 29; Ex. 20 at 31; Ex. 24 at 32.)

More generally, Syneos routinely warned investors about risks arising from adaptations to its operations, including the risk that "*[i]f we do not keep pace with rapid technological change, our services may become less competitive or obsolete*." (Ex. 10 at 57 (emphasis in original).) Syneos also specifically warned that its acquisition strategy could create "difficulties retaining and integrating acquired personnel and distinct cultures into our business," and could

give rise to "potential loss of key employees, customers, or projects." (*Id.* at 48.)

Despite not challenging Syneos' 2020 and 2021 results, Plaintiffs persist in alleging that every Syneos earnings report since September 2020 was false. Plaintiffs fail to "[un]flatten[]" the timeline—as this Court instructed, *Kempen*, 2024 WL 1805011, at *2—for obvious and disingenuous reasons. Their scienter theory rests primarily on their allegations about stock sales by the Individual Defendants, but ***all but one of the twenty-eight cited trades*** occurred before September 4, 2021 (SAC ¶¶ 279–97), when Syneos was exceeding its published expectations.

### E.    Syneos Promptly Discloses Disappointing Developments in 2022

As the pandemic's effects lingered into 2022, Syneos recognized its expected return to pre-pandemic norms was at risk. In January 2022, Syneos disclosed that it still expected clinical revenue growth in 2022 but at the lower end of projections due to lower-than-anticipated reimbursable expenses from increased remote work and an evolving COVID recovery. (ECF No. 47 at 8.) Then, on February 17, 2022, Syneos announced its 2021 financial results, informing investors that, although 2021 revenue increased 20.5% over 2020, projected revenues from Clinical net new business awards, including reimbursable expenses, declined. (Ex. 30 at 1.) Syneos explained that the use of remote clinical trials was proving more durable than previously anticipated, which led Syneos to "adjust[]" its "future expectations for reimbursable expenses." (*Id.* at 2–3; *see also* Ex. 29 at 2, 5.) Syneos reduced its reimbursable expense projection by about $538 million and broke out those expenses from the rest of its backlog numbers so that investors could have "improve[d] [] visibility into these trends." (*Id.* at 2.)

Despite the challenges, Syneos reported that it was "continu[ing] to experience strong SMID demand" (Ex. 28 at 13), and made a number of vague and hopeful statements about its future business prospects. (*Id.*) Syneos underscored, however, that it believed reimbursable expenses as a percentage of revenue would "remain lower." (*Id.* at 71.) On February 17, 2022,

following these disclosures, the price of Syneos common stock, which was trading at $83.37 per share the day before, declined to $79.36.  (SAC ¶ 207.)

On August 2, 2022, Syneos announced disappointing second quarter results, reporting that "[r]evenue was below the midpoint of the Company's guidance due to lower reimbursable expenses in Clinical Solutions and the impacts of foreign exchange."  (Ex. 37 at 2.)  The Company also reported that, including reimbursable expenses, its Clinical Solutions backlog had experienced a year-over-year decline of 34.2% and that its book-to-bill ratio had fallen.  (*Id.* at 1.)  The Company reduced its reported full-year 2022 revenue and earnings guidance by 3.6% and 2.3%, respectively, noting that projected revenues faced an "estimated net headwind of 460 basis points [*i.e.*, 4.6%] from reimbursable expenses."  (Ex. 35 at 7.)  The Company noted its lower-than-expected results and reduced outlook stemmed from declining reimbursable expenses and delays in new awards.  (*Id.* at 2.)  Syneos said it would "continue to invest" in "technology" and "innovative solutions," and pursue its "[C]linical [R]eimagined" initiative to enhance its organizational structure, systems, and to seek avenues to "fuel growth."  (Ex. 35 at 3.)

On November 4, 2022, Syneos announced its third quarter results, disclosing that "[t]otal company year-over-year revenue contracted by 0.9% for the third quarter, compared to the prior year" and that, "[i]n Clinical Solutions, revenue declined 3.5%, primarily related to reimbursable expenses and the impact of foreign exchange."  (Ex. 40 at 3.)  Syneos explained that it "experienced more significant headwinds . . . than anticipated during the third quarter," which led to results "well below our expectations."  (*Id.*)  Syneos reduced its guidance for 2022 due in part to "an estimated net headwind of 370 basis points [3.7%] from reimbursable expenses."  (*Id.* at 6.)  Syneos said that these developments took the Company by "surprise," attributing them in part to "delays in award decisions from SMID customers at a higher volume in September than we experienced in June."  (*Id.* at 4, 8.)  Management also noted that, in September, Syneos had

begun having trouble attracting "repeat business," and suggested that "our clinical operating model had begun to lose its traditional strengths of agility and leadership engagement." (*Id*. at 4.) Syneos committed to "accelerating Clinical Reimagined and enhancing our business development activities to increase our share of new business opportunities." (*Id*.) On November 4, Syneos' stock closed at $25.70, down from $47.81 on November 3. (SAC ¶ 241.)

## ARGUMENT

The Court is familiar with the requirements applicable to Plaintiffs' claims. *Kempen*, 2024 WL 1805011, at *1. (*See also* ECF No. 47 at 11–12.) The SAC comes no closer than the FAC did to satisfying those requirements.[4]

## I.    THE SAC FAILS TO PLEAD SECURITIES FRAUD WITH PARTICULARITY.

### A.    The SAC Does Not Follow the Court's Instructions.

The Court granted Plaintiffs leave to amend their complaint on two conditions. First:

> [T]he second amended complaint must identify (1) specific statements (usually not more than a few sentences), (2) contrary facts at the time of each statement, and (3) facts raising an inference of Defendants' scienter with respect to (2). Plaintiffs should also organize their complaint in the way that a court would analyze it, with headings for each category of allegedly false or misleading statements.

*Kempen*, 2024 WL 1805011, at *2. Second, the Court instructed Plaintiffs to heed the Supreme Court's holding in *Macquarie Infrastructure Corp.* v. *Moab Partners, L.P.*, 601 U.S. 257 (2024) that omissions of facts required to be disclosed under Item 303 of SEC Regulation S–K, 17 C.F.R. § 229.303(b)(2)(ii), "aren't actionable." *San Antonio Fire & Police Pension Fund* v. *Dentsply Sirona Inc.*, 2024 WL 1898512, at *6 (S.D.N.Y. May 1, 2024). Plaintiffs ignored entirely both instructions.

---

[4] Having failed to plead a primary violation of the federal securities laws, Plaintiffs have failed to plead control person liability under Section 20(a). *See ATSI Commc'ns, Inc*. v. *Shaar Fund, Ltd*., 493 F.3d 87, 108 (2d Cir. 2007). The Section 20(a) claim is not further addressed here.

The *366-paragraph* SAC is no less puzzling than the *365-paragraph* FAC this Court dismissed in April.  Like the dismissed FAC, the SAC begins with two separate iterations of a long-winded narrative spanning a total of 36 pages and 83 paragraphs.  (SAC ¶¶ 1–22, 38–98.)  From there, the SAC makes a feigned attempt to partially comply with the Court's instructions by grouping the alleged misstatements into five vaguely defined, overlapping, and inconsistently applied categories.  (*See* SAC ¶ 99.)  But the SAC does nothing to fix the most fundamental defects in the FAC:  (a) it does not identify the "specific statements (usually not more than a few sentences)" Plaintiffs challenge (as this Court instructed), and (b) it is bereft of particularized reasons that each statement was purportedly false at the time it was made.  *Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (plaintiffs "must do more" than simply declare that a statement is false—"they must demonstrate with specificity why and how that is so").

Instead, as in the FAC, the categories of alleged misstatements in the SAC are each formulaically followed by repetitive "multi-part paragraph[s]," *Kempen*, 2024 WL 1805011, at *1, each consisting of repetitive "laundry list[s]" of supposed reasons that Defendants' statements over lengthy periods were false, *In re Pareteum Sec. Litig.*, 2020 WL 3448526, at *1 (S.D.N.Y. June 23, 2020).  (*See* SAC ¶¶ 106, 113, 120, 128, 143, 153, 165, 173, 182, 193, 208, 220, 233.)  Continuing to "flatten[] the timeline," *Kempen*, 2024 WL 1805011, at *2, the SAC's allegations of false statements across the Class Period repeatedly refer back to the same series of allegations in the SAC's earlier narrative, disregarding this Court's admonition that "[t]he company's performance—and what Defendants knew about it—was changing all the time," *id.* at *2.  Indeed, Plaintiffs cite paragraphs 54–70 of the SAC *eight* separate times (SAC ¶¶ 106(a), 106(e), 113(a), 113(b), 128(a), 143(a), 155, 236) and paragraphs 71–91 of the SAC *thirteen* separate times (SAC ¶¶ 128(c), 153(a), 153(b), 154, 156, 165(a), 173(a), 182(a), 193(a), 208(a), 220(a), 233(a), 331).

-9-

Next, Plaintiffs disregard entirely the Court's instruction to delete claims and allegations foreclosed by *Macquarie*. Instead, the SAC includes *33 paragraphs* alleging Item 303 omission theories ruled out by *Macquarie*. (*See* SAC ¶¶ 99, 154–57, 166–67, 174–75, 183–84, 194–95, 209–10, 221–32, 234, 320–33.)

### B.    The SAC Systematically Fails To Particularize Its Allegations That the Challenged Statements Were Fraudulent.

Nearly all of the SAC's conclusory references to "facts" supposedly contradicting Defendants' public statements are made "on information and belief." (SAC ¶ 1 & n.1.) The Second Circuit has made clear that, where a plaintiff seeks to plead securities fraud on the basis of such "information and belief" allegations, the PSLRA requires the plaintiff to plead (i) specific "documentary evidence" that provides "an adequate basis for believing that the defendants' statements were false," and/or (ii) information contradicting the challenged statements learned from one or more insiders whom the complaint "describe[s] with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak*, 216 F.3d at 314; *see also*, *e.g.*, *Batson* v. *Rim San Antonio Acquisition, LLC*, 2016 WL 6901312, at *9 (S.D.N.Y. Nov. 22, 2016).

The SAC is replete with bare assertions that plainly do not meet this standard. To cite just one of many examples, the SAC alleges that "clients . . . pull[ed] significant amounts of business away from Syneos because the Company's clinical trial's [*sic*] business offerings were woefully inadequate and suffered from severe anti-competitive deficiencies," but the SAC pleads no sources or underlying facts that could provide a particularized basis for the Court to credit these allegations. (SAC ¶¶ 54–55; Appx. A (cataloguing additional unsourced SAC allegations).) Similarly, the SAC, apparently trying to create a false impression of particularity, includes over a dozen conclusory assertions of very specific amounts by which various metrics

-10-

were supposedly inflated at various points in the Class Period, but Plaintiffs offer no explanation whatsoever from where or how they calculated these amounts. (*See* SAC ¶¶ 153(d), 165(a), 165(d), 173(b), 173(d), 182(a), 182(b), 193(a), 193(b), 193(d), 208(d), 220(a), 220(c), 233(c).)

Moreover, the reliability and plausibility of Plaintiffs' allegations are undermined entirely by internal inconsistencies that permeate the Complaint, the most glaring examples of which are Plaintiffs' contradictory proclamations, new in the SAC, regarding the value of one particular contract that Plaintiffs allege Syneos should have removed at some unspecified time from its backlog estimates. The SAC repeatedly references this contract but is wildly inconsistent in describing its supposedly excess contribution to the backlog. (*See*, *e.g.*, SAC ¶¶ 9 ("Defendants . . . include[d] the entirety of the annual ***$300 million*** [] contract value in backlog each year"); 58 (same contract, now "***$400 million***"); 128(d) (same contract, now "***$600 million***") (emphases added).) This flip-flopping is not just sloppy drafting; it renders the effort to plead with particularity some material misstatement in Syneos' *$10.9 billion to $11.4 billion* backlog (SAC ¶¶ 160, 203) entirely implausible. *See ECA, Loc. 134 IBEW Joint Pension Tr.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) ("[T]he five percent numerical threshold is a good starting place for assessing the materiality of the alleged misstatement.").

Plaintiffs seek to lend some credibility to their allegations by hinting that they rest on counsel's "investigation" that supposedly included "interviews" of an unspecified number of "former Syneos employees" (SAC ¶ 1 n.1), but even determining which of the SAC's vague allegations are purportedly based on these "interviews," much less which allegations are attributable to which former employees, would require the Court to engage in pure guesswork. "[C]ourts generally have not credited the statements of CWs who are insufficiently described or whose descriptions do not suggest that they had been in [a] position to know the facts attributed to them." *Long Miao* v. *Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 (S.D.N.Y. 2020); *see also In re*

*Gilat Satellite Networks, Ltd.*, 2005 WL 2277476, at \*9 (E.D.N.Y. Sept. 19, 2005) ("*Novak* requires an examination of the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." (cleaned up)).   Here, the individuals Plaintiffs supposedly interviewed are not just "insufficiently described"; they are barely described at all, and the allegations they supposedly supplied are entirely unspecified.   Plaintiffs do not even say how many people they interviewed, let alone "what aspect of [the Company] or its management [each individual] was involved in, what [each individual's] job duties entailed, [and] what kind of access [they] had."   *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011).

Plaintiffs also purport to cite a few internal Syneos documents as support for their allegations.   Most notably, the SAC, like the FAC, makes heavy use of what it describes as "an internal presentation provided to the ELT in January 2021."   (SAC ¶ 58; *see also id.* ¶¶ 6, 59–60, 69, 106, 113, 120, 128, 143, 249, 260, 262, 288, 330.)[5]   Plaintiffs claim this point-in-time presentation shows—and the Individual Defendants knew—that, throughout the Class Period, clients were "cancel[ing] in droves" and "pulling significant amounts of business away from Syneos" (SAC ¶¶ 54–55), and that, contrary to their public forecasting, "Defendants expected a negative year-over-year awards growth rate of -23.3% across its clinical and commercial business and -23.5% for its clinical business in 2021" (SAC ¶ 59).   These are blatant misrepresentations, which are repeated in the SAC even though Plaintiffs' opposition to the first

---

[5] Plaintiffs do not allege from where or from whom they procured this presentation, nor do they justify their publication of this obviously highly confidential document that in no way supports their claims.  Syneos will address, at an appropriate time, any inducement by Plaintiffs and their counsel of breaches of confidentiality obligations and fiduciary duties by former Syneos employees.  Syneos would be pleased to submit the full presentation to the Court under seal or with other protections of its clients' confidences if that is the Court's preference.

motion to dismiss barely resisted the notion that the same document was misrepresented in the FAC. (ECF No. 49 at 14–15.) The presentation does *not* say that Defendants expected negative growth (of "16%-23%" (SAC ¶¶ 58, 128(d)) or otherwise) in 2021 (or any other year). As is apparent even from the truncated reproduction of one slide contained in the Complaint, the 23% number refers to *just four clients* out of *hundreds*. (*See* SAC ¶ 59.) Moreover, on its face, the entire presentation concerned only one client team that manages the Company's relationships with just *16* clients. (*Id.*) And, while the Complaint acknowledges that "Syneos's customer base was comprised predominantly of SMID biopharmaceutical companies" (SAC ¶ 39), that client team covered, and the presentation addresses, just *one* SMID client. (*Id.*) *See TufAmerica, Inc.* v. *Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (where "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control").

Plaintiffs next attempt to support their assertion that Syneos inflated its backlog by hundreds of millions of dollars throughout the Class Period by repeated reference to one July 10, 2021 email in which the author supposedly told his subordinates to "find" additional awards to include in the backlog projection. (SAC ¶ 78; *see id.* ¶¶ 11, 71–73, 76, 79–80, 143(c), 182(d), 273.) The document says no such thing. (*Id.*) The email reflects ordinary management efforts at future expense reduction. (*See* Ex. 55.) Moreover, this email relates only to *$12.5 million* in *one quarter*—out of a *$10 billion* backlog (SAC ¶ 160)—which serves only to contradict Plaintiffs' claim of *hundreds of millions of dollars* of misstatements in *eight quarters*.

The SAC purports to cite to one additional document that was not referenced in the FAC. Specifically, the SAC alleges that, "[i]n July 2019, in an email to investment bank Jefferies, Syneos acknowledged that its business was not sustainable." (SAC ¶ 56.) Even crediting this highly dubious and vague description of an email whose author and recipients are not specified, it obviously does nothing to buttress Plaintiffs' allegations of misstatements about Syneos'

pipeline and growth prospects during the Class Period, which began 14 months after the supposed email, and Syneos *did* grow throughout 2019 to 2021. *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 534 (S.D.N.Y. 2012) ("vague and unattributed statements" and communications that do not identify "substance or authorship" fail pleading standard).

Finally, the Complaint also attempts to reverse engineer evidence of fraud from various statements that Defendants made in hindsight after the Class Period.  (SAC ¶¶ 92–98, 235–44.) This effort to "seize[] upon disclosures made in later annual reports and allege[] that they should have been made in earlier ones" runs afoul of black-letter law.  *Denny* v. *Barber*, 576 F.2d 465, 470 (2d Cir. 1978).  And, Plaintiffs' characterizations are entirely unsupported by the documents cited.  There is nothing in any of these statements even approaching an admission of fraud or remotely suggesting foreknowledge of problems destined to generate negative developments.  To the contrary, Defendants expressed "surprise" at the "very recent[]" turn of events that led to the disappointing results at the end of the Class Period.  (*See supra* at 7; *see also* Appx. D at 5.)

## II.    PLAINTIFFS PLEAD NO ACTIONABLE MISSTATEMENT OR OMISSION.

### A.    Plaintiffs Allege No Misstatements of Fact.

The Complaint largely consists of challenges to the composition of Syneos' reported "backlog" (and similar metrics) and the judgments Syneos made in including or excluding anticipated future business in its backlog.  While these challenges to Syneos' projections are deficient on their face for the reasons set forth below, they also establish no *misstatement* of *fact*. Syneos described in extraordinary detail the manner in which it calculated its backlog, and the criteria used for including or excluding any potential future business in its backlog and similar metrics.  (SAC ¶ 150.)  Whether or not that methodology accurately predicted Syneos' future revenues cannot give rise to a misstatement of fact.  In *Altayyar* v. *Etsy, Inc.*, 242 F. Supp. 3d 161, 179 (E.D.N.Y. 2017), for example, the court rejected a claim that the company's revenues

and profits "were false and misleading because the reported numbers were based on a platform that was 'heavily made up of large-scale counterfeiters and sellers infringing on property rights.'" The court ruled that this theory alleges no misstatement because "the defendants explained their methodology and supplied the plaintiffs with all the information they needed to assess the reported financial results." *Id.* Here, Syneos explained its backlog and project award/cancellation methodologies, and any disagreement Plaintiffs may have with the manner in which Syneos in practice employed those methodologies asserts no misstatement. The securities laws afford no "cause of action for the review of management practices." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004).

## B.       The Challenged Statements Are Not Actionable.

***Forward-Looking Statements***.   Under the PSLRA, 15 U.S.C. § 78u-5(c), a "forward-looking statement" cannot form the basis of a securities fraud claim so long as it "is identified [as such] and accompanied by meaningful cautionary language." *Lopez* v. *Ctpartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 25 (S.D.N.Y. 2016) (cleaned up). Many of the statements challenged in the SAC fit squarely within this safe harbor. Statements about the Company's backlog and related metrics are inherently forward-looking. (*See supra* at 14–15.) And the Complaint is full of other statements about Syneos management's expectations regarding future opportunities and growth. (*See*, *e.g.*, SAC ¶ 212 ("We expect continued growth . . . ."); *see also* Appx. B at 2–11 (listing additional forward-looking statements); *Steamfitters Loc. 449 Pension Plan* v. *Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 362 (S.D.N.Y. 2019) (statements that "momentum" and "growth" would "continue" are forward-looking).) Each of those statements was identified as forward-looking and accompanied by "meaningful cautionary language." *Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund* v. *Olo Inc.*, 2023 WL 8287681, at *7 (S.D.N.Y. Nov. 30, 2023) (warning that "[o]ur rapid growth may not be sustainable and

-15-

depends on our ability to attract new customers" was meaningful cautionary language).  For example, statements about the Company's backlog were couched in warnings that "backlog might not be indicative of our future revenues, and we might not realize all of the anticipated future revenue reflected in our backlog," and that "the rate at which our backlog converts to revenue may vary over time."  (*See also* Appx. C (listing Defendants' cautionary statements).)  Accordingly, Plaintiffs cannot base their claims on any of these statements.

***Puffery and Expressions of Corporate Optimism***.  Many of the remaining statements are not actionable because they are classic puffery or otherwise incapable of inspiring reasonable reliance.  For example, the Complaint cites statements discussing the Company's status as a "market leader," describing its business or growth potential as "robust," and pointing to its "model, people, and culture" as providing a "competitive advantage."  (SAC ¶¶ 17, 103, 108–112, 138; *see also* Appx. B at 12–16 (listing other puffery statements alleged in SAC).)  Such statements are clearly inactionable puffery.  *See Lau* v. *Opera Ltd.*, 527 F. Supp. 3d 537, 553 (S.D.N.Y. 2021) (claim to be "a market leader" is "no more than puffery"); *City of Sterling Heights Police & Fire Ret. Sys.* v. *Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 89 (S.D.N.Y. 2022) ("strong culture and discipline" "fall[s] comfortably within . . . non-actionable puffery").

The Complaint also relies on countless "vaguely positive" statements about the Company's business and growth prospects that are also not actionable.  For example, the SAC points to statements that Syneos was "well positioned to accelerate growth as the [COVID-19] recovery continues" and "fe[lt] good about the demand environment."  (SAC ¶¶ 4, 104, 192; *see also* Appx. B at 17–26 (listing additional statements).)  "Statements of general corporate optimism, such as these, do not give rise to securities violations."  *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund* v. *Royal Bank of Scotland Grp., PLC,* 783 F. 3d 383, 392 (2d Cir. 2015); *Rombach*, 355 F.3d at 174 ("People in charge of an enterprise are not required to take

a gloomy, fearful or defeatist view of the future.").

## III.    THE SAC FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO THE REQUISITE COGENT AND COMPELLING INFERENCE OF FRAUD.

To plead a "strong inference" of scienter under the PSLRA, Plaintiffs must allege particularized "facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. For an inference of scienter to be "strong," the Supreme Court has ruled that "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

### A.    Plaintiffs Plead No Cognizable Motive for Defendants to Commit Fraud.

Pleading "motive and opportunity" requires particularized allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit* v. *Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Here, the SAC alleges that the Individual Defendants acted to protect their jobs and "[c]ollect millions in compensation and bonus awards." (SAC ¶¶ 311–15.) The law is clear that this is not enough. *Kalnit*, 264 F.3d at 139; *Wyche* v. *Advanced Drainage Sys., Inc.*, 710 F. App'x 471, 473 (2d Cir. 2017) ("Bonus compensation is not the type of 'concrete and personal' benefit upon which a finding of motive to commit securities fraud can be based."); *cf. Dentsply*, 2024 WL 1898512, at *7 (plaintiff alleged "a direct link" between alleged fraud and compensation because "the alleged fraud was critical—the company just barely hit the thresholds necessary for bonuses" because of the fraud).

To plead motive, the SAC primarily relies on allegations that the Individual Defendants sold Company stock during the Class Period at purportedly inflated prices. (SAC ¶¶ 276–300.) But the "mere fact that insider stock sales occurred does not suffice." *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 523 (S.D.N.Y. 2020). Plaintiffs must plead that the Individual

-17-

Defendants' transactions were "unusual" or "suspicious." *Id.* They do not do so.

First, Plaintiffs cannot possibly plead any misstatement of fact prior to year-end 2021, as until then, Syneos' business was strong and indisputably exceeding expectations. Yet, ***all but one sale*** cited in the SAC (***96.4% of the shares***) occurred prior to September 4, 2021. (SAC ¶¶ 276–99.) Plaintiffs' motive theory is temporally disconnected to any remotely viable misstatement theory.

Second, Plaintiffs paint a misleading picture of the Individual Defendants' trading activity by focusing exclusively on their stock ***sales***. By "fail[ing] to account for the Individual Defendants' stock ***acquisitions***" during the Class Period, the SAC cannot plausibly allege that the Individual Defendants' trades were suspicious. *Malin* v. *XL Cap. Ltd.*, 499 F. Supp. 2d 117, 152 (D. Conn. 2007) (emphasis added). Viewed in the full context of all of the Individual Defendants' transactions over the Class Period, none of them sold a significant portion of their Syneos stock holdings. (*See* Appx. E.) In fact, two Individual Defendants actually ***increased*** their holdings (*id.* at 1, 3–4), which is "wholly inconsistent with fraudulent intent," *Tung* v. *Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019).

Third, Plaintiffs do not allege any other relevant characteristic of suspicious trading. *Gagnon* v. *Alkermes PLC*, 368 F. Supp. 3d 750, 772–73 (S.D.N.Y. 2019). The sales were "not clustered" at the end of the Class Period, "when insiders theoretically would have rushed to cash out before the fraud was revealed," but instead all but one occurred in the first 12 months of the 26-month Class Period. *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 444–45 (S.D.N.Y. 2005).

Finally, because Defendants' trades were conducted pursuant to non-discretionary 10b5-1 plans, the sales "do not give rise to a strong inference of scienter." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014). Plaintiffs speculate that the trading plans were entered into "strategically" to "take advantage" of an inflated stock price (SAC ¶ 281), but that

speculation simply repackages their misstatement theory. And, the trades were executed at an average share price of $78.90, a full ***$25.28 lower*** than the Class Period high of $104.18 (SAC ¶ 22; Ex. 28 at 64). Plaintiffs have thus failed to allege the trades were "made at a time . . . that suggests [the Defendants were] maximizing personal benefit[.]" *City of Coral Springs Police Officers' Ret. Plan* v. *Farfetch Ltd.*, 565 F. Supp. 3d 478, 487 (S.D.N.Y. 2021).[6]

### B.     Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness.

To plead circumstantial evidence of conscious misbehavior or recklessness, Plaintiffs must allege particularized facts establishing "that [1] *specific* contradictory information was available to the defendants [2] *at the same time* they made their misleading statements." *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009) (emphases in original). "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309. And because Plaintiffs have failed to plead a motive to defraud, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.

The SAC lacks any cogent scienter theory or compelling allegations of fraud. The SAC relies on the same defective re-writing of Syneos documents in an effort to argue Defendants knew what the documents do not say (SAC ¶ 249). They make vague references to dissatisfied clients or outdated technology (SAC ¶¶ 250–54), but they nowhere suggest or explain how, when, or why any of that revealed some material financial misstatement. More fundamentally, the SAC nowhere explains how or when any of these supposedly adverse facts (a) were conveyed to any Individual Defendant and (b) contradicted his or her contemporaneous

---

[6] The SAC's heavy focus on the trades of certain third-party shareholders (*see, e.g.*, SAC ¶¶ 301–10) is of no help to Plaintiffs because the SAC fails to allege that these third parties were aware of non-public facts contradicting any public statements. *See, e.g.*, *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 174 n.29 (S.D.N.Y. 2023).

statements. *See Frankfurt-Trust Inv. Luxemburg AG* v. *United Tech. Corp.*, 336 F. Supp. 3d 196, 223 (S.D.N.Y. 2018) (scienter absent where it was "not alleged with particularity" how specific contradictory information was "reported up the chain" to the speaker).

The Complaint's remaining scienter allegations should be swiftly rejected. Plaintiffs' assertions that the Individual Defendants must have known of contradictory information by virtue of their senior roles (SAC ¶¶ 246–47), their "visibility" into the Company's operations (*see*, *e.g.*, SAC ¶ 256), or their involvement in the Company's "core business" (SAC ¶ 263) are plainly insufficient, as "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight," *Lipow* v. *Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015); *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 238–39 (S.D.N.Y. 2022). And the mere fact that some of the Individual Defendants left the Company (SAC ¶ 319)—over the course of a year and a half—likewise does not give rise to an inference of scienter. *BISYS*, 397 F. Supp. 2d at 446–47 ("In reality, there are any number of reasons that an executive might resign, most of which are not related to fraud."); *cf. Dentsply*, 2024 WL 1898512, at *10–11 (executive departures that occurred "in rapid succession" following internal investigation of fraud supported inference of scienter). Finally, "the magnitude of a revenue decrease from one year to another" does not show that it was the result of fraud, particularly in the absence of any other indicia of scienter. *Denny* v. *Canaan Inc.*, 2023 WL 2647855, at *14 (S.D.N.Y. Mar. 27, 2023).

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.

-20-

Dated:    New York, New York          Respectfully submitted,
          June 14, 2024

                                       */s/ Brian T. Frawley*
                                       Brian T. Frawley
                                       Benjamin R. Walker
                                       SULLIVAN & CROMWELL LLP
                                       125 Broad Street
                                       New York, New York 10004
                                       (212) 558-4000
                                       frawleyb@sullcrom.com
                                       walkerb@sullcrom.com

                                       *Attorneys for Defendants Syneos Health, Inc., Alistair*
                                       *Macdonald, Michelle Keefe, Paul Colvin and Jason*
                                       *Meggs*

-21-