

## DICELLO LEVITT

4747 EXECUTIVE DRIVE    SECOND FLOOR    SAN DIEGO, CALIFORNIA 92121

HENRY ROSEN
HROSEN@DICELLOLEVITT.COM
619.923.3939

March 26, 2025

**VIA ECF**

The Honorable Arun Subramanian
United States District Court
 for the Southern District of New York
500 Pearl St., Courtroom 15A
New York, NY  10007

   Re: *Kempen Int'l Funds, et al. v. Syneos Health, Inc., et al.*,
     Case No. 1:23-cv-08848 (AS) (S.D.N.Y.)

Dear Judge Subramanian:

  Lead Plaintiffs respectfully submit this response to Defendants' March 24, 2025 letter submission of two recent decisions: *Damri v. LivePerson, Inc.*, No. 23 CIV. 10517 (PAE), 2025 WL 863322 (S.D.N.Y. Mar. 19, 2025), and *In re Vroom, Inc. Sec. Litig.*, No. 21 Civ. 2477 (PGG), 2025 WL 862125 (S.D.N.Y. Mar. 18, 2025). Neither order weighs in favor of granting Defendants' motion to dismiss.

  In *Damri*, the court found plaintiffs' allegations of falsity and materiality lacking. In doing so, however, the court did not reject the statements as inactionable because of the substance of each statement. Rather, the court found "[s]alient" that plaintiffs' falsity allegations were "based entirely on" "vaguely put allegations attributed to unidentified sources," noting that plaintiffs did not have sources of information that "corroborated" such allegations. 2025 WL 863322, at *11, *14-*15. And as pertinent here, the *Damri* court rejected falsity for the additional reason that plaintiffs had pleaded that "LivePerson ***publicly and contemporaneously disclosed its decision to change metrics***," and "***d[id] not allege that LivePerson ever inaccurately tabulated any of the announced metrics*** it used." *Id.* at *16. The court similarly found plaintiffs' materiality allegations "conclusory." *Id.* at *17. Here, however, Plaintiffs allege in detail how Defendants ***repeatedly and intentionally violated their explicit "New Business Awards and Backlog" methodology and reported false performance metrics***, detailing the extent to which Defendants increased the inflation in the backlog during each successive quarter

Hon. Arun Subramanian
March 26, 2025

throughout the Class Period." ¶¶73-83, 85-87, 145-195.[1] The SAC also explains in detail why such metrics are material to investors. ¶¶40-49. Furthermore, the SAC provides ample corroboration for Plaintiffs' claims of falsity and materiality, including observations of former Syneos employees, reference to internal documents, statements from securities analysts, the magnitude of the alleged fraud, and Defendants' admissions. ¶¶50-91, 94-95, 97, 236-244, 316-318. *Damri* is simply not applicable.

*Vroom* is equally unpersuasive. In *Vroom*, the court found that plaintiffs "plead[ed] no facts contradicting the Company's public narrative" on inventory allegations, and their key factual allegation – that Better Business Bureau complaints evidenced an undisclosed "'logistical bottleneck'" – was found to be speculative and "have no bearing on the truth or falsity of these assertions." 2025 WL 862125, at *15, *17-*18 (citation omitted). Here, the SAC presents particularized facts demonstrating contemporaneous falsity for each category of challenged statements, describes who spoke each specific statement alleged to be fraudulent, identifies when and where each statement was made, and describes with particularity why those statements were false when made. For example, the SAC identifies specific agreements Defendants used to inflate the performance metrics (*e.g.*, ¶220(a), 233(a)), lays out a quarterly timeline by which to measure the increasingly inflated performance metrics (*e.g.*, ¶¶220(c), 233(c)), describes former finance department employees' experiences being bullied to manipulate backlog and inflate the Company's performance metrics (¶¶71-91), and cites documents such as Defendant Colvin's July 2021 "find it" email which demonstrates Defendants' blatant tactics to inflate Syneos's performance metrics. ¶¶78-91, 182(d). Vastly superior to the allegations found lacking in *Vroom*, the SAC's particularized facts are more than sufficient.

Defendants' reliance on *Damri* and *Vroom* as support for their assertion that the SAC's insider trading allegations do not support an inference of scienter is misplaced. In *Damri*, each of the selling defendants "retained far more shares that they sold," and "many of the stock sales were automatic, made to cover . . . tax liabilities upon acquisition of shares upon vesting of options." 2025 WL 863322, at *25. And in *Vroom*, one defendant was alleged to have sold "just over 50% of his Vroom holdings," the other did not sell any shares, and no control period was alleged. 2025 WL 862125, at *34. By contrast, in addition to the non-defendant insiders' more than $3 billion in illicit trading here, all four individual defendants sold between 53% and 100% of their Class Period holdings, their Class Period trading differed dramatically from their pre-Class Period trading, and Macdonald, Meggs, and Keefe all began selling just weeks after amending their trading plans during the Class Period. ¶¶279-281, 286-288, 292-294. ECF No. 62 at 19-20.[2]

---

[1] All "¶_" and "¶¶__" are paragraph citations to the Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 57) ("SAC").

[2] Keefe and Colvin sold all or nearly all of their shares (¶¶294, 297); Macdonald sold 53% of his shares (¶282); and Meggs sold 80% of his shares (¶288). Sales of this magnitude support an inference of scienter. ECF No. 62 at 19.

Hon. Arun Subramanian
March 26, 2025

Moreover, far beyond the scienter allegations in *Damri* and *Vroom*, the SAC's insider trading allegations, while sufficient on their own, are but one of the many detailed facts that wholistically create a cogent and compelling inference of scienter, which includes: (i) Defendants' admissions that structural and operational problems had plagued the clinical business since the beginning of the Class Period (¶¶236-239, 242-244); (ii) weekly sales calls and emails, and monthly finance meetings during which efforts to manipulate backlog and prematurely recognize revenue were discussed (¶¶271-273); (iii) specific examples where Defendants manipulated and inflated backlog (¶¶73, 76-77); (iv) Defendants' senior roles within the Company and their own statements indicating they had "good" "visibility" into the Company's pipeline (¶¶247-250, 255-262); (v) the magnitude of the fraud (¶¶316-318); (vi) the abrupt departures of four of the most senior Syneos executives (¶319); and (vii) the core nature of the clinical solutions business further buttress Plaintiffs' scienter allegations (¶263). In stark contrast to *Damri*, Plaintiffs' allegations of Defendants' scienter are corroborated by the experiences of former Syneos employees (¶¶61-68, 71-91) and are entirely consistent with the substance of Defendants' monthly ELT meetings and the January 2021 ELT presentation. ¶¶6-7, 57-60, 69. These detailed allegations are far from the "generic" allegations found in *Vroom*, and they are more than sufficient here, especially given that Defendants have failed to offer a cogent and compelling competing inference.[3]

Defendants' submissions have no bearing on the sufficiency of the SAC. Lead Plaintiffs have properly and sufficiently alleged each element of their claims, including identifying each challenged statement, explaining why those statements are false, and detailing Defendants' conscious recklessness. Defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,

*s/ Henry Rosen*

HENRY ROSEN
DICELLO LEVITT LLP

Counsel for Lead Plaintiffs

---

[3] Defendants' footnote citing *Damri*'s and *Vroom*'s treatment of Regulation S-K is equally misplaced. First, Defendants never argued that the SAC's Item 303 allegations failed to plead knowledge. ECF No. 59 at 8, 10; ECF No. 63 at 2. As such, this argument is waived. Second, the SAC conforms with Item 303's pleading requirements by tying Defendants' knowing Item 303 violations to their affirmative false and misleading statements, including the false performance metrics they knew violated the Company's stated methodology for calculating backlog. *See, e.g.*, ¶¶165-167 (detailing how Defendants knew their statements were false and how their knowingly false statements violated Item 303).