# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN GLOBAL EQUITY), KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN PATRIMONIUM), and MERCLIN INSTITUTIONAL FUND (MERCLIN INSTITUTIONAL EQUITY FUND DBI-RDT), Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYNEOS HEALTH, INC., ALISTAIR MACDONALD, MICHELLE KEEFE, PAUL COLVIN, and JASON MEGGS,<br><br>Defendants. | Case No. 1:23-cv-08848-AS<br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

BRIAN T. FRAWLEY
BENJAMIN R. WALKER
KRYSTAL D. VALENTIN
NIKKO B. PRICE
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

*Attorneys for Defendants Syneos Health, Inc.,
Alistair Macdonald, Michelle Keefe, Paul Colvin
and Jason Meggs*

May 9, 2025

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

      A.      Defendants ..................................................................................................3

      B.      The Company's Financial Reporting ................................................................4

      C.      The Company Successfully Tackles Challenges During the COVID-19 Pandemic in 2020 ..................................................................................................4

      D.      Syneos Posts Strong 2021 Results, Which Are Nowhere Challenged .....................5

      E.      Syneos Promptly Discloses Disappointing Developments in 2022 ........................6

ARGUMENT ..................................................................................................8

I.      THE TAC FAILS TO PLEAD SECURITIES FRAUD WITH PARTICULARITY ..........9

      A.      Plaintiffs Again Fail To Follow the Court's Instructions ........................................9

      B.      Plaintiffs Systematically Fail To Particularize Their Allegations That the Challenged Statements Were Fraudulent ..................................................................12

II.     THE TAC PLEADS NO ACTIONABLE MISSTATEMENT OR OMISSION ...............15

III.    THE TAC FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO THE REQUISITE COGENT AND COMPELLING INFERENCE OF FRAUD .............22

      A.      Plaintiffs Plead No Cognizable Motive for Defendants to Commit Fraud ............23

      B.      Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness ........................24

IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION .....................................................27

CONCLUSION ..................................................................................................28

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abuhamdan* v. *Blyth, Inc.*,
9 F. Supp. 3d 175 (D. Conn. 2014)......................................................................................20

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................................8

*Avon Pension Fund* v. *GlaxoSmithKline PLC*,
343 F. App'x 671 (2d Cir. 2009) ........................................................................................24

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018)..................................................................................25

*Batson* v. *Rim San Antonio Acquisition, LCC*,
2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016)......................................................................12

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)...........................................................................24, 27

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
506 F. App'x 32 (2d Cir. 2012) ..........................................................................................17

*Born* v. *Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)..................................................................................28

*Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)................................................................................................28

*City of Coral Springs Police Officers' Ret. Plan* v. *Farfetch Ltd.*,
565 F. Supp. 3d 478 (S.D.N.Y. 2021)..................................................................................24

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Reckitt Benckiser Grp. PLC*,
587 F. Supp. 3d 56 (S.D.N.Y. 2022)....................................................................................15

*Damri* v. *LivePerson, Inc.*,
2025 WL 863322 (S.D.N.Y. Mar. 19, 2025) ..................................................................12, 13

*Denny* v. *Barber*,
576 F.2d 465 (2d Cir. 1978).................................................................................................15

*Denny* v. *Canaan Inc.*,
2023 WL 2647855 (S.D.N.Y. Mar. 27, 2023) ......................................................................27

*Diabat* v. *Credit Suisse Grp. AG*,
2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024)...................................................................16, 28

*In re DraftKings Inc. Sec. Litig.*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023)..............................................................................24

*Dura Pharms., Inc.* v. *Broudo*,
544 U.S. 336 (2005)..........................................................................................................28

*In re Evolus Inc. Sec. Litig.*,
2024 WL 4306786 (S.D.N.Y. Sept. 26, 2024)...................................................................23

*Fogel* v. *Wal-Mart de México SAB de CV*,
2017 WL 751155 (S.D.N.Y. Feb. 27, 2017)......................................................................26

*Frankfurt-Trust Inv. Luxemburg AG* v. *United Tech. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018)...............................................................................25

*Glaser* v. *The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)...............................................................................13

*Holbrook* v. *Trivago N.V.*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019)......................................................................20

*Jackson* v. *Abernathy*,
960 F.3d 94 (2d Cir. 2020)................................................................................................25

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001)........................................................................................23, 25

*Kempen Int'l Funds* v. *Syneos Health, Inc.*,
2024 WL 1805011 (S.D.N.Y. Apr. 25, 2024)..............................................................1, 8, 9

*Kempen Int'l Funds* v. *Syneos Health, Inc.*,
2025 WL 949576 (S.D.N.Y. Mar. 28, 2025) ................................................................. *passim*

*Lipow* v. *Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015)...............................................................................27

*Long Miao* v. *Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)...............................................................................13

*In re Lottery.com, Inc. Sec. Litig.*,
2025 WL 605485 (S.D.N.Y. Feb. 25, 2025)......................................................................23

*Malin* v. *XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007)...............................................................................23

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   851 F. Supp. 2d 512 (S.D.N.Y. 2012) ................................................... 15

*N.E. Carp. Guaranteed Annuity & Pension Funds* v. *DeCarlo*,
   122 F.4th 28 (2d Cir. 2023) ................................................................... 21

*In re Paysafe Ltd. II Secs. Litig.*,
   2025 WL 1003322 (S.D.N.Y. Mar. 31, 2025) ................................... 16, 20

*Police and Fire Ret. Sys. City of Detroit* v. *Argo Grp. Int'l Holdings, Ltd.*,
   2024 WL 5089970  (S.D.N.Y. Dec. 12, 2024) ................................. 16, 17

*Prime Mover Cap. Partners L.P.* v. *Elixir Gaming Techs., Inc.*,
   898 F. Supp. 2d 673 (S.D.N.Y. 2012) ................................................... 28

*In re PXRE Grp., Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ................................................... 25

*Robeco Glob. Consumer Trends* v. *Peloton Interactive, Inc.*,
   665 F. Supp. 3d 522 (S.D.N.Y. 2023) ................................................... 19

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004) ............................................................... 9, 15

*Steinberg* v. *Ericsson LM Tel. Co.*,
   2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ......................................... 9

*In re Teladoc Health, Inc. Sec. Litig.*,
   2025 WL 886934 (S.D.N.Y. Mar. 21, 2025) ......................................... 24

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................... 2, 27

*TufAmerica, Inc.* v. *Diamond*,
   968 F. Supp. 2d 588 (S.D.N.Y. 2013) ................................................... 10

*In re Vroom, Inc. Sec. Litig.*,
   2025 WL 862125 (S.D.N.Y. Mar. 18, 2025) ................................. *passim*

*Woolgar* v. *Kingstone Cos., Inc.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020) ................................................... 21

*Wyche* v. *Advanced Drainage Sys., Inc.*,
   710 F. App'x 471 (2d Cir. 2017) ........................................................... 23

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B) ........................................................................ 12

15 U.S.C. § 78u-4(b)(4) ....................................................................................................................27

15 U.S.C. § 78u-5(c) ........................................................................................................................15

## TABLE OF ABBREVIATIONS[1]

| | |
|---|---|
| Class Period | Putative class period of September 9, 2020 through November 3, 2022 |
| CRO | Contract Research Organization |
| CW | Confidential Witness |
| GCS | Global Client Solutions |
| ELT | Executive Leadership Team |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78qq |
| FAC | [First] Amended Complaint for Violation of the Federal Securities Laws (ECF No. 35) |
| Individual Defendants | Alistair Macdonald, Michelle Keefe, Paul Colvin, and Jason Meggs |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 & 78u-5 |
| Rule 9(b) | Fed. R. Civ. P. 9(b) |
| Rule 10b-5 | SEC Rule 10b-5, 17 C.F.R. § 240.1b-5 |
| SAC | Second Amended Complaint for Violation of the Federal Securities Laws (ECF No. 57) |
| SEC | U.S. Securities and Exchange Commission |
| Section 10(b) | Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) |
| Section 20(a) | Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) |
| SMID | Small to mid-sized pharmaceutical companies |
| Syneos or the Company | Syneos Health, Inc. |
| TAC or Complaint | Third Amended Complaint for Violation of the Federal Securities Laws (ECF No. 67) |

---

[1] Unless otherwise noted, capitalized terms not otherwise defined herein have the same meaning ascribed to them as in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint (ECF No. 47) and Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint (ECF No. 59).

## PRELIMINARY STATEMENT

The TAC is Plaintiffs' fourth attempt to plead a viable securities fraud claim. It should be their last. In March, the Court held that the SAC "didn't come close to addressing th[e] issues" the Court instructed Plaintiffs to remedy when dismissing the FAC. *Kempen Int'l Funds* v. *Syneos Health, Inc.*, 2025 WL 949576, at *1 (S.D.N.Y. Mar. 28, 2025) ("*Kempen II*"); *see* 2024 WL 1805011 (S.D.N.Y. Apr. 25, 2024) ("*Kempen I*"). Despite the Court spoon-feeding Plaintiffs "even more specific guidance" because "apparently its prior instructions weren't clear enough," 2025 WL 949576, at *1, the TAC fails entirely to heed that guidance, or adhere to the PSLRA. Instead, the TAC remains a rambling mess of repetitive, incoherent, and contradictory allegations. This Court's Orders, and the PSLRA, demand much more, particularly in a case where Plaintiffs purport to seek "billions of dollars" in damages. (TAC ¶30.) This action should be dismissed for a third—and final—time.

To be sure, the TAC tries to create the illusion of compliance with *one* aspect of *Kempen II* by superficially identifying eighteen alleged misstatements. In all other respects, Plaintiffs flout this Court's Orders, including by failing to plead particularized facts "explaining why [each] statement was false or misleading when made and why defendants knew or should have known that," *Kempen II*, 2025 WL 949576, at *1, and by persisting in "flatten[ing] th[e] timeline" with vague generalities about events over 26 months even though "[t]he company's performance—and what Defendants knew about it—was changing all the time," *Kempen I*, 2024 WL 1805011, at *2, all the while not challenging any of Syneos' actual financial results, which exceeded expectations through year-end 2021.

Plaintiffs also fail to grapple with the numerous "substantive issues" identified in *Kempen II*, 2025 WL 949576, at *2. For example, Plaintiffs continue to rely wholesale on a January 2021 presentation to the Syneos ELT that remains obviously and disingenuously

mischaracterized in the TAC. Ignoring the Court's admonitions, Plaintiffs still propose sweeping falsity and scienter suppositions from this single point-in-time document that relates only to a slice of Syneos' business and unambiguously does not say what Plaintiffs claim it says. And Plaintiffs nowhere "tak[e] account of the critiques raised in defendants' briefing." *Id.*

Beyond these fatal pleading flaws, the TAC does not plausibly allege any actionable misstatements. Read charitably, the TAC alleges that, for over two years (during the COVID-19 pandemic), Defendants failed to volunteer self-criticism about emerging operational problems while *accurately* reporting historical financial results amid upbeat statements about the Company's growth and strengths. The TAC also continues to focus on Syneos' reported "backlog," which Plaintiffs previously admitted is a projection of "anticipated future revenue" from expected business in the pipeline (SAC ¶¶3, 41). The TAC does not plausibly allege that any of its eighteen enumerated challenged statements was inaccurate when made, and the statements are not actionable because they are insufficiently specific, classic puffery, or protected forward-looking statements.

The TAC also lacks the requisite particularized allegations demonstrating a strong inference of scienter, which the Supreme Court has held requires a "cogent" and "compelling" inference of fraud. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). Plaintiffs point to the Individual Defendants' sales of Syneos stock during the Class Period as evidencing a motive to defraud, but this is a red herring. The trade timing does not match up with Plaintiffs' misstatement theories, and they plead no suspicious trading activity. To contend that Defendants knew their public statements were false, Plaintiffs simply rehash the same mischaracterizations of documents and internal information underlying their assertions of falsity, virtually none of which are shown to have been provided to the speaker of any challenged

statement. And, like the SAC, the TAC "doesn't engage with the substance of any specific statement, but instead trades in generalities." *Kempen II*, 2025 WL 949576, at \*2. That is insufficient under the PSLRA.

Lastly, the TAC fails to plead loss causation because none of the four alleged "corrective disclosures" actually corrected any alleged misstatement. Plaintiffs have presumably resisted pleading their claims in an orderly fashion because even their current tepid attempt makes clear that the supposed "corrections" revealed recent developments, and did not remotely *correct* any prior statement.

In litigation, like in baseball, after three strikes the batter is out. The Court should now dismiss this case with prejudice.

## FACTUAL BACKGROUND

### A.    Defendants

Syneos is a leading biopharmaceutical solutions company operating two business segments, Clinical Solutions and Commercial Solutions. (TAC ¶¶2, 36.) The Complaint focuses on Clinical Solutions, which offers global services for the development of diagnostics, drugs, biologics, devices, and digital therapeutics. (Ex. 20 at 70.)[2] Alistair Macdonald served as Syneos CEO from 2016 until retiring in April 2022. (TAC ¶37.) Michelle Keefe was CEO thereafter until October 2023, and remained a Board member until June 2024. (TAC ¶38.) Jason Meggs was CFO from February 2018 until March 2023. (TAC ¶39.) Paul Colvin was President of Clinical Solutions and later Chief Business Officer prior to August 2022. (TAC ¶40.)

---

[2] "Ex. __" refers to exhibits to the accompanying Declaration of Benjamin R. Walker.

## B.    The Company's Financial Reporting

As a public company during the Class Period, Syneos periodically reported standard financial metrics, including revenue and income.  (Ex. 7 at 74–91.)  Syneos also reported other operating metrics, including "backlog," which consists of "anticipated future revenue from new business awards that either have not started, or that are in process and have not been completed," and converts to future revenue if work is undertaken and Syneos is paid.  (*Id.* at 35, 73.)  In any given year, about 42% of backlog is converted into revenue, while backlog increases or decreases depending on new awards each quarter.  (*Id.* at 73.)  The remainder of the backlog projects out over "five, six years."  (Ex. 21 at 13.)

Syneos also reported "reimbursable out-of-pocket expenses," which are anticipated costs that Syneos expects to incur and to be reimbursed by its customers, including fees paid to contractors in connection with delivering on future clinical studies.  Syneos' fully disclosed practice was to include projected pass-through expenses in backlog as anticipated revenues. (*See*, *e.g.*, Ex. 3 at 4.)

Throughout the Class Period, the Company repeatedly emphasized the uncertainty of its backlog projections.  For example, in its SEC filings, Syneos warned in bold and italicized text: "***Our backlog might not be indicative of our future revenues, and we might not realize all of the anticipated future revenue reflected in our backlog.***"  (Exs. 4 at 30; 7 at 35; 10 at 28; 13 at 29; 17 at 30; 20 at 36; 26 at 27; 28 at 27.)

## C.    The Company Successfully Tackles Challenges During the Pandemic in 2020

Like many other companies, Syneos was affected by business disruptions during the COVID-19 pandemic.  One initially unexpected but later enduring effect was a reduction in Syneos' reimbursable expenses.  Most clinical trials, which were conducted in person pre-

pandemic, moved to a virtual format, and many continued to be conducted remotely even after social-distancing requirements relaxed.  (Ex. 21 at 5.)

From the beginning of the Class Period, Syneos informed investors that reductions in reimbursable expenses were negatively impacting revenues.  (*See*, *e.g.*, Ex. 7 at 71, 74–75.)  In the third quarter of 2020 (TAC ¶164), Syneos reduced reimbursable expenses due to COVID-19 impacts (Ex. 3 at 4 ("Our net awards were impacted by backlog adjustment reflecting changes in our expectations for reimbursable expenses.")).  Syneos continually reiterated that its backlog had "been and we expect will continue to be affected by the broad effects of the COVID-19 pandemic."  (Exs. 4 at 30; 7 at 73; 10 at 28; 13 at 29; 17 at 30; 20 at 72; 26 at 27; 28 at 27.)

To adapt, Syneos facilitated virtual access to clinical sites.  Syneos was hopeful the pandemic's effects could be limited and its impacts temporary.  But Syneos made clear that some impacts might be longer-lasting, warning that "[o]ur full service studies and, to a lesser extent, our functional service provider offering have been impacted, and we expect them to continue to be impacted."  (Ex. 4 at 28.)  Like many businesses, Syneos withdrew its financial guidance for 2020, but ended 2020 with 5.9% year-over-year growth and met its updated guidance.  (Exs. 3 at 7; 8 at 3.)

### D.    Syneos Posts Strong 2021 Results, Which Are Nowhere Challenged

In November 2021, Syneos announced it had exceeded its earnings guidance for the first three quarters of the year, reporting revenue growth of 17.2% company-wide and 19.8% in Clinical Solutions.  (Ex. 18 at 2.)  The Company ultimately achieved year-over-year growth of 18.1%, matching its earnings guidance for 2021.  (Ex. 22 at 2.)  Notably, Plaintiffs do not challenge the accuracy of Syneos' reported revenue or earnings in 2021 (or any other time).

At the same time Syneos accurately reported its financial results, it cautioned that "we expect that the COVID-19 pandemic will continue to negatively impact our Clinical Solutions

revenue throughout 2021," pointing to "the trend of more remote monitoring visits and delayed patient enrollment, resulting in lower reimbursable out-of-pocket expenses and related revenue as the recovery continues." (Exs. 10 at 29; 13 at 31; 17 at 32.)

### E.    Syneos Promptly Discloses Disappointing Developments in 2022

As the pandemic's effects lingered into 2022, Syneos recognized its expected return to pre-pandemic norms was at risk.  In January 2022, Syneos disclosed that it still expected Clinical revenue growth in 2022 but at the lower end of projections due to lower-than-anticipated reimbursable expenses from increased remote work and an evolving pandemic recovery.  (ECF No. 47 at 8.)  Despite the challenges, Syneos reported that it was "continu[ing] to experience strong SMID demand" (Ex. 20 at 13), and made a number of generally optimistic statements about its business strengths and prospects (*id.*).  Syneos underscored, however, that it believed reimbursable expenses as a percentage of revenue would "remain lower." (*Id.* at 71.)

On February 17, 2022, Syneos announced its 2021 financial results, informing investors that, although 2021 revenue *increased* 18.1% over 2020, projected future revenues from Clinical new business won in 2021 *declined* 7.9%. (Ex. 22 at 1–2.)  Syneos explained that "the pandemic has accelerated the adoption of virtual engagement with sites and patients, creating increased demand for decentralized solutions capabilities," leading to continued reduced travel and other costs, which led Syneos to reduce its "future expectations for reimbursable expenses." (*Id.* at 2–3; Ex. 21 at 2, 5; TAC ¶161.)  Syneos also "improve[d] [] visibility" by thereafter separately reporting expenses in its backlog.  (Ex. 21 at 2, 5.)  Because Syneos earns no profit on pass-through expenses, "[t]hese adjustments only impact [its] outlook for reimbursable expenses, not [its] view of underlying demand or profitability." (*Id.* at 5.)  Despite the TAC's focus on the notion that Syneos' backlog was overstated, Syneos did not thereafter reduce its reported backlog.  On February 17, Syneos' stock declined "nearly 5%." (TAC ¶162.)

On August 2, 2022, Syneos announced disappointing second quarter results. Although Clinical revenues *increased* 3.3%, they fell "below the midpoint of the Company's guidance." (Ex. 29 at 2.) Projected future revenues from Clinical new business awards experienced a year-over-year decline of 34.2%. (*Id.* at 1.) The Company reduced its reported 2022 revenue and earnings guidance, noting that projected revenues faced an "estimated net headwind of 460 basis points [*i.e.*, 4.6%] from reimbursable expenses." (Ex. 27 at 7.) Syneos said it would "continue to invest" in "technology" and "innovative solutions" and pursue its "[C]linical [R]eimagined" initiative to enhance its organizational structure and systems. (*Id.* at 3.) On August 2, Syneos' stock declined "over 17%." (TAC ¶175.)

On September 13, 2022, Ms. Keefe spoke at a healthcare conference, revealing "near term headwinds [that] are a challenge" and significant declines in new business awards. (Ex. 30 at 4; TAC ¶¶176–77.) She also noted that following "record quarters of SMID awards" in Q4 2021 and Q1 2022 (which Plaintiffs do not challenge), higher-than-normal award delays in Q2 2022 "ha[d] begun to have a more pronounced impact on [SMID] RFP flow," and that this "dynamic" had "continued into Q3." (Ex. 30 at 3.) On September 14, Syneos' stock declined "nearly 17%." (TAC ¶178.)

On November 4, 2022, Syneos announced its Q3 results, disclosing that Company revenues declined year-over-year by 0.9%, and declined 3.5% in Clinical due to reduced new business and award delays. (Ex. 34 at 2.) Projected revenues from Clinical quarterly new business awards declined 86.5%. (*Id.* at 1.) Syneos reduced its guidance for 2022 due in part to "lower net new business awards, delays in backlog conversion, and customer delays in its FSP business." (*Id.* at 4.) Syneos explained that it "experienced more significant headwinds . . . than anticipated during the third quarter," which led to results "well below our expectations." (Ex. 33

at 3.)  Developments during the quarter had taken the Company by "surprise," in part due to "delays in award decisions from SMID customers at a higher volume in September than we experienced in June."  (*Id.* at 4, 8.)  Management also noted that, in September, Syneos had begun having trouble attracting "repeat business," and suggested that "our clinical operating model had begun to lose its traditional strengths of agility and leadership engagement."  (*Id.* at 4; *see id.* at 20 ("this is a new phenomen[on]" Syneos "just recognized . . . in our Q3"); *id.* ("We haven't seen a reduction [in] repeat business until Q3.").)  On November 4, Syneos' stock declined "46%."  (TAC ¶185.)

On December 1, 2022, Syneos' management explained that the surprising third quarter reflected an "unexpected decline in [the] overall Clinical SMID win rate in Q3" that was "the lowest level . . . seen in 3 years," and that the "abrupt change that happened [in Q3] was the post-revenue SMID award dynamics, which really frankly surprised us . . . [b]ecause in Q1 of '22 and Q4 of '21," Syneos received "the largest SMID award[s] that we had seen in the history of Syneos."  (Ex. 35 at 2, 4.)  Syneos "had a significantly lower win rate on the [Q3] opportunities," and "decision delays that were 3x to 4x higher than [Syneos] experienced in Q2," which "limited the award opportunities [] expected at the end of that quarter."  (*Id.* at 2; TAC ¶186.)

## ARGUMENT

The Court is familiar with the heightened pleading requirements applicable to Plaintiffs' claims.  *Kempen I*, 2024 WL 1805011, at *1.  (*See also* ECF No. 47 at 11–12.)  As before, the TAC falls well short of satisfying these requirements.[3]

---

[3] Having failed to plead a primary violation, Plaintiffs have failed to plead control person liability under Section 20(a).  *See ATSI Commc'ns, Inc*. v. *Shaar Fund, Ltd*., 493 F.3d 87, 108 (2d Cir. 2007).

## I.      THE TAC FAILS TO PLEAD SECURITIES FRAUD WITH PARTICULARITY.

### A.      Plaintiffs Again Fail To Follow the Court's Instructions.

After the SAC did not "come close" to following the Court's prior repleading guidance, the Court gave Plaintiffs "one final chance" to try again, and provided "even more specific guidance on at least some of the problems" with the SAC. *Kempen II*, 2025 WL 949576, at *1. Plaintiffs again ignore virtually all of the Court's directions.

*First*, although Plaintiffs purport to have pared the alleged misstatements down to eighteen, the TAC still "doesn't address each statement on its own terms, explaining why that statement was false or misleading when made and why defendants knew or should have known that." *Id.* Instead, Plaintiffs continue to "trade[] in generalities" with "cut-and-paste falsity and scienter allegations" throughout the TAC. *Id.* at *2. While Plaintiffs no longer repeatedly "cit[e] back to the same blocks of paragraphs," *id.*, they now duplicate largely the same allegations over and over in purporting to explain why different statements on different topics at different points during the Class Period were false (*compare*, *e.g.*, TAC ¶138(ii) *with* ¶¶147(ii), 154(ii), 165(ii); ¶138(iii) *with* ¶¶147(iii), 154(iii), 165(iii); ¶138(iv) *with* ¶¶147(iv), 154(v)). Neither approach satisfies the PSLRA, and both impermissibly "flatten[] the timeline." *Kempen I*, 2024 WL 1805011, at *2; *see Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

In addition, Plaintiffs make *no effort whatsoever* to plead scienter separately with respect to each statement. As the Court admonished, to satisfy their burden under the PSLRA, Plaintiffs must plead with particularity the supposedly contrary facts that each Defendant purportedly knew at the time each challenged statement was made. *Kempen II*, 2025 WL 949576, at *2; *see Steinberg* v. *Ericsson LM Tel. Co.*, 2008 WL 5170640, at *12–*13 (S.D.N.Y. Dec. 10, 2008) (dismissing complaint that did not particularize "Defendants' knowledge or access to contradictory facts" at the time of each statement). The 68 paragraphs of undifferentiated

scienter theories (TAC ¶¶189–257) remain untethered to the Defendants or to the supposed misstatements.

*Second*, the TAC cures none of the "substantive issues" with Plaintiffs' allegations that the Court identified in *Kempen II*, 2025 WL 949576, at *2. For example, Plaintiffs continue to "rely heavily on a few slides from a presentation shown in January 2021 to the [ELT]," *id.*, but the TAC leaves unanswered most of the Court's pointed questions about the presentation and its alleged import. And Plaintiffs continue to grossly misrepresent the same three slides reproduced again in the TAC. To cite just a few of many such misrepresentations, the slide headed "GCS FY21 Gross Awards Targets" plainly ***does not*** show that "clinical business for the Company's Top 15 account, [*sic*] declined by 2.7%." (TAC ¶79.) It is apparent from the face of the slide that the left-hand column lists the sixteen clients "covered by [the] GCS" customer-relationship team, eleven of which are large pharma companies among the "Top 20 Accounts," four of which are among the "21-50 [] Accounts," and one of which is a "SMID Top 250" account. (*Id.*) The slide says nothing about "the Company's Top 15 account[s]." And the only reference to "-2.7%" is to the projected (not actual) 2021 gross awards (*i.e.*, future revenues) from the sixteen GCS clients (not "Top 15 account[s]"). (*Id.*) And, far from "forecast[ing] zero growth for Syneos'[] 15 largest accounts" (TAC ¶14), the slide clearly states that, for the eleven "Top 20 Accounts" covered by GCS (*i.e.*, the "biggest pharma clients"), Syneos projected 4.9% ***positive*** growth for 2021. *See TufAmerica, Inc.* v. *Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (where "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control[s]"). Of course, the slide could not possibly show that Syneos "was hundreds of millions of dollars short of its awards target for 2021" (TAC ¶14); this "FY 21 *Budget*," from the beginning of the year, ***is*** the target. (TAC ¶79 (emphasis added).)

The TAC likewise exacerbates the SAC's wildly inconsistent descriptions of one particular multi-year contract that Plaintiffs now describe as an FSP contract that "Syneos was awarded involvement in . . . along with another CRO partner." (TAC ¶20, 114, 130.) Plaintiffs continue to claim that Syneos' backlog was inflated by including multiple years of projected revenue from this contract in its backlog, while still "strangely" attributing a wide range of different values to this same contract. *Kempen II,* 2025 WL 949576, at *2. The 44 new TAC references to the contract and its supposed contribution to Syneos' backlog are equally contradictory, but even more incomprehensible, than those in the last complaint. The TAC now admits that the multi-year contract totaled just $300 million in value and Syneos only "was awarded involvement in" it (*e.g.*, TAC ¶¶114, 136), but the TAC simultaneously and irreconcilably asserts that (i) the entire $300 million (minus $20 million of revenue actually received) was included in Syneos' backlog in 2020 (¶136), (ii) an *additional* $70 million was added to backlog in each quarter of 2021 (*e.g.*, TAC ¶¶136, 147, 152), putting its backlog value at $490 million or $560 million in 2021 (¶¶165, 168), and (iii) "Syneos included $300 million *per year* from the [] contract" in backlog (*id.* at 7 n.4 (emphasis added)). All of this from a client that produced *total* awards of $72.4 million in 2020. (TAC ¶79.) None of that makes sense, but Plaintiffs make no effort to explain it. And the contradictions do not end there. In one allegation, Plaintiffs say that Syneos entered into the multi-year contract in "late 2019" (TAC ¶13), but in another, Plaintiffs say that the *same client* "refused to give the Company new awards" between "2017 and 2019" (*id.* ¶3). Those two statements cannot both be true.

The TAC also disregards the Court's criticisms about Plaintiff's allegations regarding "Syneos'[] handling of reimbursable expenses." *Kempen II*, 2025 WL 949576, at *3. The TAC contains the same vague, conclusory allegations about "reimbursable expenses [Defendants]

-11-

knew they would never collect" (TAC ¶23) and still does not plead "how much of the reimbursable expenses" were supposedly uncollectible or "when . . . [D]efendants kn[e]w that some portion would be uncollectible," *Kempen II*, 2025 WL 949576, at *3.

> **B.      Plaintiffs Systematically Fail To Particularize Their Allegations That the Challenged Statements Were Fraudulent.**

The TAC's misstatement theories rest entirely on counsel's supposed "investigation" and undifferentiated and largely unattributed views from ill-described former employees. (TAC at 1 n.1.) Where, as here, allegations are "made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). This standard requires Plaintiffs to plead (i) specific "documentary sources" that provide "an adequate basis for believing that the defendants' statements were false," and/or (ii) information contradicting the challenged statements learned from one or more insiders whom the complaint "describe[s] with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak* v. *Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *see Damri* v. *LivePerson, Inc.*, 2025 WL 863322, at *10–*11 (S.D.N.Y. Mar. 19, 2025).

The TAC is replete with bare assertions that plainly do not meet this standard. To cite just one of many examples, the TAC repeatedly makes the bald claim that "Syneos inflated its backlog and performance metrics by including in backlog three to four years of award value for FSP awards, rather than the 12 months of value Syneos represented it was taking." (TAC ¶116; *id.* ¶¶129, 135, 146, 152, 207.) Despite the plural reference to "awards," the TAC refers only to the one $300 million contract, and Plaintiffs concede that the sole basis for the entirety of these allegations is what "counsel was informed" by *unspecified sources*. (TAC at 7 n.4; *id.* at 1 n.1 ("Lead Plaintiffs . . . are informed by their interviews").) This is deficient. *Batson* v. *Rim San*

-12-

*Antonio Acquisition, LCC*, 2016 WL 6901312, at \*9 (S.D.N.Y. Nov. 22, 2016) (dismissing claim where "Plaintiffs have not identified any source—documentary or personal—of their information and belief"). The vast majority of Plaintiffs' allegations of supposedly known and contradictory facts are similarly unattributed and unparticularized. (*See* Appx. A (cataloguing unsourced TAC allegations).)

Plaintiffs on occasion seek to bolster some factual statement by reference to a former Syneos employee, but their pleading tactics "exemplify multiple methodological shortcomings that have led courts to view attributions to CWs with caution and care." *Damri*, 2025 WL 863322, at \*11. As in *Damri*, (i) "no CW is alleged to have had direct involvement in revenue forecasting," (ii) none "'reported directly' to an Officer Defendant," and (iii) the TAC is "blurry as to the time periods during which the CWs ostensibly gained the information reported," as well as their "tenures" at Syneos. *Id.* at \*10; *see Long Miao* v. *Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 (S.D.N.Y. 2020) (rejecting "statements of CWs who are insufficiently described"). Here, although Plaintiffs include a laundry list of job titles for the CWs (TAC at 1 n.1), they do not allege "what aspect of [the Company] or its management [each individual] was involved in, what [each individual's] job duties entailed, [and] what kind of access [they] had." *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011). No CW is alleged to have had any financial reporting role, and none "identif[ies] with specificity any public financial statement that was purportedly misstated or later corrected." *Damri*, 2025 WL 863322, at \*10.

In the few instances where Plaintiffs do purport to attribute particular alleged facts to particular CWs, those allegations get them no closer to pleading a viable claim. For example, the TAC alleges that an "Associate Director of Finance" "observed" unnamed "management" supposedly allowing contract "backdating" on "multiple occasions with increasing frequency in

-13-

2021 and 2022." (TAC ¶112.) Nowhere do Plaintiffs allege the value of these supposed contracts, when the conduct occurred relative to the challenged statements, or if, when, or how the Individual Defendants became aware of it. More importantly, despite their use of the pejorative (and false) "backdating" term, Plaintiffs do not explain the relevance of this practice to Syneos' backlog, which was disclosed publicly to include "anticipated revenue awarded from contract and pre-contract commitments that are supported by written communications." (Ex. 7 at 35 ("[W]e have no contractual right to the full amount of the future revenue reflected in our backlog.").) Indeed, the TAC *does not at all challenge* any statement about Syneos' backlog in 2022, so the reference to what supposedly occurred in 2022 is irrelevant.

Plaintiffs also purport to cite a few internal Syneos documents as support for their allegations. Beyond their disingenuous references to the January 2021 ELT presentation, Plaintiffs point to a single July 10, 2021 email to contend that Syneos inflated its backlog by hundreds of millions of dollars throughout the Class Period. (TAC ¶90; *see id.* ¶¶96, 143, 213.) The document does *not* ask employees to "'find' awards to make targets" (TAC ¶102), but to *set* targets. It has nothing to do with *backlog*, but "targets as improvement" for inclusion "to finalize the *forecast*." (TAC ¶143 (emphasis added); *see* Ex. 47.) Moreover, this email relates only to *$12.5 million* in *one quarter*—out of a *$10+ billion* backlog (TAC ¶158)—which serves only to contradict Plaintiffs' claim of *hundreds of millions of dollars* of misstatements in *eight quarters*.

The TAC makes passing reference to a July 2019 "email to investment bank Jefferies" in which Syneos supposedly "acknowledged that its business was not sustainable." (TAC ¶3.) Even crediting the bizarre premise of this email whose author and recipients are not specified, it supports no challenge to Syneos' pipeline and growth prospects during the Class Period, which

-14-

*began* 14 months after the supposed email, and when Syneos undisputedly *did* grow throughout 2019 to 2021. *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 534 (S.D.N.Y. 2012) (rejecting "vague and unattributed" allegations).

Finally, the Complaint attempts to reverse engineer evidence of fraud from various statements certain Defendants and non-defendants made in hindsight after the Class Period. (TAC at 38 n.10, ¶¶186–88, 195–97.) This effort to "seize[] upon disclosures made in later annual reports and allege[] that they should have been made in earlier ones" runs afoul of black-letter law. *Denny* v. *Barber*, 576 F.2d 465, 470 (2d Cir. 1978). There is nothing in any of these statements showing a prior misstatement or remotely suggesting prior foreknowledge of problems destined to generate negative developments. To the contrary, Defendants expressed "surprise" at the events transpiring *during* Q3 2022 that led to the quarter's disappointing results. (*See supra* at 8; *see also* Appx. B.)

## II.    THE TAC PLEADS NO ACTIONABLE MISSTATEMENT OR OMISSION.

The TAC purports to challenge eighteen specified statements (many of which actually consist of several separate statements) and "emphasize[s] in ***bold/italics***" the portions of those statements that Plaintiffs contend were false or misleading. (TAC at 21 n.8.) As detailed below, many of those statements are inactionable because they are (i) too general to be relied upon, classic puffery, or vague expressions of corporate optimism, *see, e.g.*, *City of Sterling Heights Police & Fire Ret. Sys.* v. *Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 89 (S.D.N.Y. 2022); *Rombach*, 355 F.3d at 174; and/or (ii) forward-looking statements accompanied by meaningful cautionary language that are protected under the PSLRA, *see* 15 U.S.C. § 78u-5(c).

More fundamentally, Plaintiffs do not sufficiently plead that any of the identified statements was actionably false. Plaintiffs' falsity allegations are a repetitive collection of vague assertions of supposedly undisclosed information about things like a "toxic work culture" and the

"lack of a client portal" (*e.g.*, TAC ¶¶9–10), and nowhere do Plaintiffs coherently explain how any of this alleged information actually contradicted any of Syneos statements or backlog estimates at the time they were made. Plaintiffs' attempts to do so are confusing, overlapping, and often incomprehensible. And Plaintiffs' explanations for the purported falsity of Defendants' statements are largely disconnected from the actual subject matter of the statements. For instance, Plaintiffs claim that a statement at a conference that "[o]ur model, people, and culture are our competitive advantage" was false "because the Company's customers demanded far more technologically advanced product capabilities than Syneos could offer." (TAC ¶¶62–63.) That is a non sequitur. *See, e.g.*, *Diabat* v. *Credit Suisse Grp. AG*, 2024 WL 4252502, at *91 (S.D.N.Y. Sept. 19, 2024) (plaintiff "fail[ed] to connect [omitted information] to the topic of the challenged misstatement").

*Statement No. 1.* Plaintiffs allege that snippets from a slide included in a September 9, 2020 industry conference presentation—"Positioned for Accelerated Revenue and Margin Growth," "Leadership Position in High-Growth SMID/Biotech," and "Successfully Penetrating Large Pharma"—were false and misleading. (TAC ¶47.) But Plaintiffs ignore that the basis for each of these snippets is further explained on the same slide (reproduced in the TAC), with multiple underlying facts, none of which Plaintiffs challenge. *In re Paysafe Ltd. II Secs. Litig.*, 2025 WL 1003322, at *18 (S.D.N.Y. Mar. 31, 2025) (statements must be read in context). Moreover, the challenged statements are classic puffery that is "categorically incapable of being 'false' or 'misleading' because by their very nature no reasonable investor would rely on them." *Hawes* v. *Argo Blockchain plc*, 2024 WL 4451967, at *3 (S.D.N.Y. Oct. 9, 2024) (statements "that a company is 'well positioned,' or that a year was 'successful' are . . . puffery"); *see Paysafe*, 2025 WL 1003322 at *23 at *23 ("[s]ignificant growth opportunities," "significant

long-term growth potential," was "positioned in the highest growth vertical markets," and was "a global leader" not actionable).  The TAC also does not explain how Defendants' vague statements were rendered false or misleading by unparticularized alleged facts that Syneos was "impaired" by certain "subpar technology capabilities" and "workforce reductions" (TAC ¶48).

*Statement No. 2.*  Plaintiffs challenge a statement during a December 8, 2020 conference noting recent results with "top 50 pharma customers" and that Syneos' "legacy strength is in the small to midsized, or SMID, segment where we continue to enjoy an overweighted position relative to our total market share."  (TAC ¶57.)  Plaintiffs do not dispute the truth of these historical factual observations, but argue that this "business was not sustainable."  (TAC ¶60.) The Second Circuit "easily rejected" a similar claim that a company's "statements about its earnings were actionable, even though literally true, because they did not acknowledge the long-term unsustainability of its business model."  *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012).

*Statement Nos. 3–5.*  Plaintiffs challenge Defendants' statements in December 2020 and January 2021 (i) touting "[o]ur model, people, and culture" as Syneos' "competitive advantage" (TAC ¶62), (ii) describing Syneos' "trusted process" as "designed to deliver consistent services" and "provid[ing] extraordinary value" (TAC ¶67), and (iii) stating that employees of a recently acquired company were "fantastic," had "settled in very quickly," had helped "enhance[]" Syneos' position as a "lead[er]" in the SMID market, and would be a "great growth driver for the future" (TAC ¶71).  These statements are all textbook puffery.  *See*, *e.g.*, *Police & Fire Ret. Sys. City of Detroit* v. *Argo Grp. Int'l Holdings, Ltd.*, 2024 WL 5089970, at *11 (S.D.N.Y. Dec. 12, 2024); *In re Vroom, Inc. Sec. Litig.,* 2025 WL 862125, at *25–*28 (S.D.N.Y. Mar. 18, 2025). They are also not false simply because the Company allegedly faced operational issues.

-17-

*Kempen II,* 2025 WL 949576, at *2 ("plaintiffs need to do more than just show that some issues existed in some parts of the company").

*Statement No. 6.* Plaintiffs allege that a statement during an April 29, 2021 earnings call about unspecified projects that had been "reprioritized," "push[ed] back," and taken out of backlog, were false because two oncology trials supposedly had been canceled but not taken out of backlog. (TAC ¶¶74–75.) But Plaintiffs allege no basis whatsoever for inferring that Syneos was talking about the same projects. Nor does Plaintiffs' assertion about some disagreement among Syneos employees over whether to remove some projected revenues from backlog plead any misstatement of fact, much less a material one, given that the two contracts amounted to 0.4% of Syneos' $11.2 billion backlog (TAC ¶134).

*Statement Nos. 7–9.* The TAC challenges statements in April, August, and September 2021 referencing Syneos' "integrated capabilities" (TAC ¶77), its strategy to "further penetrat[e] large pharma" (*id.*), its "differentiated product development strategy" (TAC ¶85), its "integrated product offerings" (*id.*), and its "very good SMID mix," which the Company expected to be a "driver[]" as we move into 2022 and 2023" (TAC ¶92). Plaintiffs do not allege that Syneos lacked these strategies or expectations. Their claim that the statements were false relies on Plaintiffs' mischaracterizations of the January 2021 ELT presentation, which does not say anything on these topics (*see supra* at 10).

Plaintiffs' purported falsity explanations for these statements rest on the notion that, over a year later, "Defendant Keefe admitted in 2022 [that] the Company's operations had been in disarray for at least 18 months and Syneos lacked the technological offerings to 'be more competitive.'" (TAC ¶86; *accord id.* ¶93.) This characterization of Ms. Keefe's statements (conspicuously light on quotation), which she made during Syneos' November 4, 2022 earnings

-18-

call and a December 1, 2022 conference, bears no relation to what Ms. Keefe actually said. Ms. Keefe's only mention of the prior eighteen months were (i) a reference to "a number of leadership and organizational changes within strategic business development over the last 18 months," and (ii) a statement that "we were not integrating all the great capabilities we've developed and acquired over the last 12 to 18 months consistently into our . . . bid defenses."[4] (Ex. 33 at 4, 8.) Neither statement said anything about Syneos' operations over the prior eighteen months, much less anything about the product mix and development Plaintiffs allege were misrepresented a year or more earlier. And Ms. Keefe's only statement in which she used the one short phrase that Plaintiffs quote—"be more competitive"—was that Syneos had been "continuing to just stay focused on improving [post-revenue SMID client retention] so that we can be more competitive in the marketplace." (Ex. 35 at 6.) That statement about the future is obviously not an admission that Syneos in the past lacked the technological resources necessary to compete, much less that Defendants had known that for eighteen months—which, of course, would have been totally incongruous with the impressive (and unchallenged) financial results that Syneos posted during that period.

In any event, these statements are, once again, textbook puffery and vague expressions of corporate optimism, *Robeco Cap. Growth Funds SICAV-Robeco Glob. Consumer Trends* v. *Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 530 (S.D.N.Y. 2023) (company's strategy to "continu[e] to further penetrate the markets we're in"), and, with respect to the expression of expectations for 2022 and 2023, inactionably forward-looking, *Vroom*, 2025 WL 862125, at *25–*32.

---

[4] Further context for these statements—all of which is totally inconsistent with Plaintiffs' mischaracterization—is included in Appendix B, which provides a side-by-side comparison of Plaintiffs' inaccurate allegations and Defendants' actual post-Class Period statements.

*Statement No. 10.*  Plaintiffs next challenge November 3, 2021 statements that Syneos was "ramp[ing] up in our larger pharma relationships, particularly in oncology" and "winning a lot of oncology work" (TAC ¶98), which Plaintiffs claim were false only because Syneos supposedly lost two $25 million oncology contracts "earlier" (TAC ¶99), but Plaintiffs do not allege that Syneos was not winning oncology work in 2021 overall.  *See Abuhamdan* v. *Blyth, Inc.*, 9 F. Supp. 3d 175, 205 (D. Conn. 2014) (allegations "too vague and lacking in particularity" where complaint "provide[d] no quantitative information about how many (or what percentage) of customers were experiencing . . . issues").  This theory is also flawed for the same reasons as Statement No. 6.  And statements about "ramp[ing] up" and "winning" work are puffery.  *Paysafe*, 2025 WL 1003322, at *23–*24.

*Statement No. 11.*  Syneos' statements that it was "executing against the value-creation plan" and "driving . . . long-term growth" and "operational efficiency" by being "innovative" (TAC ¶104) are not shown to be false, *Vroom*, 2025 WL 862125, at *7, *13–*21, and are too general to be relied upon, *see Holbrook* v. *Trivago N.V.*, 2019 WL 948809, at *18 (S.D.N.Y. Feb. 26, 2019) ("innovation" and "improvement" references "make no concrete representations").

*Statement Nos. 12–13.*  Plaintiffs contend that Syneos misrepresented its backlog methodology by stating that backlog (i) included new business when collection was "probable"; (ii) limited FSP contracts to the next twelve months of revenues; (iii) eliminated canceled projects quarterly; and (iv) reflected a "conservative" approach.  (TAC ¶¶107–21.)  Plaintiffs say these statements were false because Syneos included unsigned, uncollectable, or terminated contracts in backlog, and booked three to four years of FSP value instead of just one.  (TAC ¶¶111–16, 120.)  As explained above, these conclusory allegations lack particularity, are based

improperly upon unidentified sources, and lack any pleading of amounts or timing that could possibly allege some material misstatement.

In addition, Syneos' judgment as to whether or to what extent something qualifies as backlog is an opinion that is not alleged to have been actionably misleading. *Woolgar* v. *Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 224 (S.D.N.Y. 2020) ("Complaint is devoid of allegations demonstrating . . . that Defendants did not honestly believe their opinions regarding the strength or adequacy of the Company's loss reserves, or that they believed those estimates to be false."). And Syneos' policy made clear that items were included in backlog without written contracts. (TAC ¶107.) Plaintiffs' oblique reference to some $100 million "bonus" having become uncollectible (TAC ¶113) is unmoored in time and completely lacking factual details demonstrating how that bonus was included in backlog or when and why the bonus became definitively uncollectible.

***Statement Nos. 14–17.*** Plaintiffs challenge Syneos' reported backlog and related metrics for the fourth quarter of 2020 and the first three quarters of 2021. (TAC ¶¶122–56.) That theory fails for the same reason that Plaintiffs' backlog methodology theory fails: Plaintiffs do not allege with particularity the circumstances of any non-compliance with backlog policies, explain how any such deviation caused backlog to be materially overstated at any moment in time, or establish that opinions about including items in backlog are actionable.[5] *N.E. Carpenters Guaranteed Annuity & Pension Funds* v. *DeCarlo*, 122 F.4th 28, 41 (2d Cir. 2023) ("If a statement turns on the exercise of subjective judgment, a plaintiff will be unable to establish that it is false merely by showing that other reasonable alternative views exist."). Plaintiffs'

---

[5] Plaintiffs' allegations that Syneos "prematurely recognize[d] revenue" (TAC ¶¶127, 135, 146) from backlog are incoherent; converting backlog to revenue reduces—not increases—backlog. And Plaintiffs do not challenge the accuracy of Syneos' reported revenues ***at any time***.

speculation that Syneos' backlog was overstated simply because Syneos *later* concluded that certain reimbursable expenses would not materialize pleads no misstatement. Plaintiffs nowhere allege—as they must, *Kempen II*, 2025 WL 949576, at *3—when, why, and by how much expenses were no longer collectible. Plaintiffs premise their reimbursable expense theory on a Jefferies equity research report (TAC ¶¶131, 136, 147, 154), but far from suggesting that Syneos knew those expenses would not later materialize, Jefferies said that the "Premise Of Backlog Reduction Is Defensible," because pass-through expenses "aren't really known at time of award and must be estimated," and "Mgt underestimated remote stickiness and overestimated the return to traditional trial models and the travel that goes with them." (Ex. 23 at 1.)

**Statement No. 18.** Lastly, Plaintiffs challenge an April 29, 2022 statement by non-Defendant Michael Brooks that "this year, we've been really focusing in on customer, customer, customer, customer, being exceptional in delivery and quality and simplifying our operating model." (TAC ¶169.) Once again, this vague statement is inactionable puffery, and Plaintiffs do not adequately allege that it was false or contend that Syneos did not "focus" on "being exceptional" regardless of its level of success in doing so. *Vroom*, 2025 WL 862125, *18.

## III. THE TAC FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO THE REQUISITE COGENT AND COMPELLING INFERENCE OF FRAUD.

To plead a "strong inference" of scienter under the PSLRA, Plaintiffs must allege particularized "facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Tr.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009. Plaintiffs' allegations, which are identical to their earlier complaints, again do neither.

-22-

**A.    Plaintiffs Plead No Cognizable Motive for Defendants to Commit Fraud.**

Pleading "motive and opportunity" requires particularized allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit* v. *Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Here, the TAC alleges that the Individual Defendants acted to protect their jobs and "[c]ollect millions in compensation and bonus awards." (TAC ¶¶249–53) The law is clear that this is insufficient. *Kalnit*, 264 F.3d at 139; *Wyche* v. *Advanced Drainage Sys., Inc.*, 710 F. App'x 471, 473 (2d Cir. 2017).

The TAC also relies on allegations that the Individual Defendants sold Company stock during the Class Period at purportedly inflated prices. (TAC ¶¶216–43.) But the "mere fact that insider stock sales occurred does not suffice." *In re Evolus Inc. Sec. Litig.*, 2024 WL 4306786, at *27 (S.D.N.Y. Sept. 26, 2024). Plaintiffs must plead that the Individual Defendants' transactions were "unusual" or "suspicious." *Id.* They do not do so.

*First*, **all but one sale** cited in the TAC (**96.4% of the shares**) occurred prior to September 4, 2021, when Syneos' business was indisputably exceeding expectations and before any plausible misstatement of fact could have been made. (TAC ¶¶216–43.) These sales cannot possibly form the basis of scienter for statements that occurred many months later. If the Individual Defendants were indeed motivated by a desire to "cash out," they would have sold their shares *after*, not before, they made statements allegedly propping up Syneos' share price. *See In re Lottery.com, Inc. Sec. Litig.*, 2025 WL 605485, at *24 (S.D.N.Y. Feb. 25, 2025).

*Second*, Plaintiffs paint a misleading picture of the Individual Defendants' trading activity by focusing exclusively on their stock *sales*. By "fail[ing] to account for the Individual Defendants' stock *acquisitions*" during the Class Period, the TAC cannot plausibly allege that the Individual Defendants' trades were suspicious. *Malin* v. *XL Cap. Ltd.*, 499 F. Supp. 2d 117, 152 (D. Conn. 2007) (emphasis added). Overall, none of the Individual Defendants sold a

significant portion of their Syneos stock over the Class Period.  (*See* Appx. C.)  In fact, two Individual Defendants actually **increased** their holdings (*id.* at 1, 3–4), which precludes a "'cogent and compelling' inference of fraudulent intent" from their trading, *Avon Pension Fund* v. *GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009).

*Third*, the sales were "not clustered" at the end of the Class Period, "when insiders theoretically would have rushed to cash out before the fraud was revealed," but instead all but one occurred in the first 12 months of the 26-month Class Period.  *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 444–45 (S.D.N.Y. 2005).

*Fourth*, because Defendants' trades were conducted pursuant to non-discretionary 10b5-1 plans, the "sales are not suspicious and do not contribute to an inference of improper motive."  *In re Teladoc Health, Inc. Sec. Litig.*, 2025 WL 886934, at *10 (S.D.N.Y. Mar. 21, 2025).  Plaintiffs speculate that the trading plans were entered into "strategically" "to take advantage" of an inflated stock price (TAC ¶221), but that speculation simply repackages their faulty misstatement theory.  And the trades were executed at an average share price of $78.90, a full **$25.28 lower** than the Class Period high of $104.18 (TAC ¶30; Ex. 20 at 64).  Plaintiffs have thus failed to allege the trades were "made at a time . . . that suggests [the Defendants were] maximizing personal benefit[.]"  *City of Coral Springs Police Officers' Ret. Plan* v. *Farfetch Ltd.*, 565 F. Supp. 3d 478, 487 (S.D.N.Y. 2021).[6]

### B.    Plaintiffs Do Not Plead Conscious Misbehavior or Recklessness.

To plead circumstantial evidence of conscious misbehavior or recklessness, Plaintiffs must allege particularized facts establishing "that [1] *specific* contradictory information was

---

[6] The trades of certain third-party shareholders (TAC ¶¶239–48) whose statements and knowledge are not at issue are entirely irrelevant.  *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 174 n.29 (S.D.N.Y. 2023).

available to the defendants [2] *at the same time* they made their misleading statements." *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009). "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309. And because Plaintiffs have failed to plead a motive to defraud, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.

The TAC lacks any cogent scienter theory or compelling allegations of fraud. The documents Plaintiffs cite cannot provide the requisite specific, contradictory information, because Plaintiffs systematically re-write those documents in an effort to argue that Defendants knew what the documents do not say. (TAC ¶193.) Plaintiffs make vague references to dissatisfied clients or outdated technology (TAC ¶¶194–97), but they nowhere suggest or explain how, when, or why any of that revealed some material financial misstatement. *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 373 (S.D.N.Y. 2018) (references to internal data "insufficient, as plaintiffs do not identify what specific facts these data would have contained that contradicts [defendant's] statement"). More fundamentally, the TAC nowhere explains how or when any of these supposedly adverse facts (i) were conveyed to any Individual Defendant or anyone else with responsibility for contemporaneous challenged statements[7] and (ii) contradicted any of those statements. Those alleged facts therefore cannot form the basis of scienter. *Frankfurt-Trust Inv. Luxemburg AG* v. *United Tech. Corp.*, 336 F. Supp. 3d 196, 223 (S.D.N.Y. 2018) (scienter absent where it was "not alleged with particularity" how specific contradictory information was "reported up the chain" to the speaker).

---

[7] *Jackson* v. *Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (scienter may be imputed to corporation only where individual with knowledge of the alleged fraud was responsible for the alleged misstatements).

Plaintiffs' vague references to unidentified former employees nowhere establishes any Individual Defendant's knowledge that any statement was false. The TAC includes a conclusory allegation that certain Individual Defendants "were told by other Syneos executives that dissatisfied clients had stopped awarding Syneos new business" (TAC ¶194), but Plaintiffs tellingly never allege which "executives" made these statements (or to whom), when, where, or how they made them, or why this information would render any challenged statement false or misleading. Nor does the TAC allege what information contrary to the challenged statements was supposedly shared during alleged "weekly Monday sales calls" (TAC ¶210) or "several" other "monthly" meetings (TAC ¶¶211–12), or in vaguely described "emails" sent by some unidentified "Senior Director" at some point during a 19-month period (TAC ¶214). The claim that an unidentified business unit officer "predicted" to his superiors (not any Individual Defendant) that backlog was unsustainable (TAC ¶215) is meaningless. This contention fails even to describe any misstatement, much less that this "predict[ion]" was reported to any Individual Defendant or anyone else responsible for the challenged statements. The assertion that these issues were discussed with an unidentified employee who "reported to" one of the Individual Defendants is not enough. *See Fogel* v. *Wal-Mart de México SAB de CV*, 2017 WL 751155, at *16 (S.D.N.Y. Feb. 27, 2017) (fact that individual defendant "supervised" an individual with knowledge of the alleged fraud insufficient to allege scienter).

The remaining scienter allegations should be swiftly rejected. Plaintiffs' assertions that the Individual Defendants must have known of contradictory information by virtue of their senior roles (TAC ¶¶190–91), their "visibility" into the Company's operations (*see*, *e.g.*, TAC ¶199), or their involvement in the Company's "core business" (TAC ¶206) are plainly insufficient, as "[c]ourts in this Circuit have long held that accusations founded on nothing more

-26-

than a defendant's corporate position are entitled to no weight," *Lipow* v. *Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015). And the mere fact that some of the Individual Defendants left the Company (TAC ¶257)—over the course of a year and a half—likewise does not give rise to an inference of scienter because, "[i]n reality, there are any number of reasons that an executive might resign, most of which are not related to fraud." *BISYS*, 397 F. Supp. 2d at 446–47. The "magnitude of" the drop-off in Syneos' business (TAC ¶254) is not probative of scienter, *Denny* v. *Canaan Inc.*, 2023 WL 2647855, at *14 (S.D.N.Y. Mar. 27, 2023), and some failure to win future business in 2022 is unconnected to Plaintiffs' misstatement theories.

\*\*\*\*

"A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. As "none of [P]laintiffs' allegations showed even a weak inference of scienter, there is no logical way" that "the combined effect of the allegations would form a *strong* inference of scienter." *Malin*, 312 F. App'x at 402. On this record, the competing inferences show a Company addressing emerging business issues in the wake of the pandemic, and disclosing contemporaneously adverse business developments that "simply did not exist in a materially harmful way at the time of the Company's public disclosures." *Vroom*, 2025 WL 862125, at *38.

## IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

The TAC also lacks any cognizable loss causation theory, *i.e.*, "that the act or omission of the defendant[s] . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). In the TAC (¶285), Plaintiffs attempt to plead a "corrective disclosure theory," but fail to show that "the available public information regarding the company's financial condition [was] corrected, . . . and that the market reacted negatively to the corrective

disclosure." *Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014); *see Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 343 (2005).

To be corrective, the disclosure must actually "reveal the truth with respect to *the specific misrepresentations alleged*." *Diabat*, 2024 WL 4252502, at *151 (cleaned up). Rather than showing a correction of a historical Syneos challenged statement, Plaintiffs allege expressly that the four so-called "corrective" disclosures merely reported on new events: (a) "a shockingly low book to bill ratio" (TAC ¶266), (b) "a substantial deterioration in the Company's business" (¶270), (c) "lower-than-expected book-to-bill ratios" (¶273), and (d) "a startling year-over-year decline" in new business awards (¶276). None of these statements in any sense revealed what Plaintiffs contend was misstated or omitted previously. Indeed, the TAC does not say that the contracts allegedly included improperly in backlog were reversed, and thus "fails to allege that the truth about th[ese] categories of alleged misstatements ever was revealed." *Prime Mover Cap. Partners L.P.* v. *Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 686 (S.D.N.Y. 2012).

The TAC suggests that the stock drop on February 17, 2022 was caused by Syneos' reduction of "reimbursable expenses" in backlog. (TAC ¶266.) But the reduction of a projection does not reveal any falsity in the prior projection. *Born* v. *Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 494 (S.D.N.Y. 2021) (announcement of projection miss "which may have announced a 'corrective path' for the company going forward, are not 'corrective' disclosures for purposes of alleging loss causation.").

## CONCLUSION

For the foregoing reasons, the TAC should be dismissed with prejudice.

-28-

Dated:  New York, New York          Respectfully submitted,
        May 9, 2025

                                    */s/ Brian T. Frawley*
                                    Brian T. Frawley
                                    Benjamin R. Walker
                                    Krystal D. Valentin
                                    Nikko B. Price
                                    SULLIVAN & CROMWELL LLP
                                    125 Broad Street
                                    New York, New York 10004
                                    (212) 558-4000
                                    frawleyb@sullcrom.com
                                    walkerb@sullcrom.com
                                    valentink@sullcrom.com
                                    pricenb@sullcrom.com

                                    *Attorneys for Defendants Syneos Health, Inc., Alistair Macdonald, Michelle Keefe, Paul Colvin and Jason Meggs*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN GLOBAL EQUITY), KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN PATRIMONIUM), and MERCLIN INSTITUTIONAL FUND (MERCLIN INSTITUTIONAL EQUITY FUND DBI-RDT), Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYNEOS HEALTH, INC., ALISTAIR MACDONALD, MICHELLE KEEFE, PAUL COLVIN, and JASON MEGGS,<br><br>Defendants. | **Case No. 1:23-cv-08848-AS** |

**S.D.N.Y. LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION**

We hereby certify pursuant to Southern District of New York Local Civil Rule 7.1(c) that the foregoing Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Third Amended Complaint was prepared on a computer using Microsoft Word. The total number of words in the brief is 8,750 words, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, table of abbreviations, signature blocks, and any required certificates.

Dated:    New York, New York          Respectfully submitted,
          May 9, 2025

                                      */s/ Brian T. Frawley*
                                      Brian T. Frawley
                                      Benjamin R. Walker
                                      Krystal D. Valentin
                                      Nikko B. Price
                                      SULLIVAN & CROMWELL LLP
                                      125 Broad Street
                                      New York, New York 10004
                                      (212) 558-4000
                                      frawleyb@sullcrom.com
                                      walkerb@sullcrom.com
                                      valentink@sullcrom.com
                                      pricenb@sullcrom.com

                                      *Attorneys for Defendants Syneos Health, Inc., Alistair*
                                      *Macdonald, Michelle Keefe, Paul Colvin and Jason*
                                      *Meggs*

-31-