**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN GLOBAL EQUITY), KEMPEN INTERNATIONAL FUNDS (KEMPEN INTERNATIONAL FUNDS - MERCLIN PATRIMONIUM), and MERCLIN INSTITUTIONAL FUND (MERCLIN INSTITUTIONAL EQUITY FUND DBI-RDT), Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> SYNEOS HEALTH, INC., ALISTAIR MACDONALD, MICHELLE KEEFE, PAUL COLVIN, and JASON MEGGS, <br><br> Defendants. | Case No. 1:23-cv-08848-AS <br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

BRIAN T. FRAWLEY
BENJAMIN R. WALKER
KRYSTAL D. VALENTIN
NIKKO B. PRICE
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

*Attorneys for Defendants Syneos Health, Inc.,*
*Alistair Macdonald, Michelle Keefe, Paul Colvin,*
*and Jason Meggs*

June 13, 2025

## TABLE OF CONTENTS

**Page**

1.    Plaintiffs Continue to Disregard This Court's Guidance .......................................................1

2.    The TAC Fails To Plead Plaintiffs' Claims With Particularity ...........................................3

3.    Plaintiffs Plead No Actionable Misstatement or Omission .................................................5

4.    Plaintiffs Fail To Plead Scienter ........................................................................................7

5.    Plaintiffs Cannot Plead Loss Causation............................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ................................................................4, 7

*Akerman* v. *Arotech Corp.*,
608 F. Supp. 2d 372 (E.D.N.Y. 2009) ...................................................................9

*Alaska Laborer Emp'rs Ret. Fund* v. *Scholastic Corp.*,
2010 WL 3910211 (S.D.N.Y. Sept. 30, 2010) .......................................................8

*Avon Pension Fund* v. *GlaxoSmithKline PLC*,
343 F. App'x 671 (2d Cir. 2009) ...........................................................................7

*Batson* v. *Rim San Antonio Acquisition, LCC*,
2016 WL 6901312 (S.D.N.Y. Nov. 22, 2016) ........................................................3

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
506 F. App'x 32 (2d Cir. 2012) .............................................................................6

*Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72, 75 (2d Cir. 2013) ......................................................................11

*Chapman* v. *Mueller Water Prod., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020)....................................................................7

*Damri* v. *LivePerson, Inc.*,
2025 WL 863322 (S.D.N.Y. Mar. 19, 2025) .........................................................4

*Defeo* v. *IonQ, Inc.*,
134 F.4th 153 (4th Cir. 2025) ..............................................................................10

*Diabat* v. *Credit Suisse Grp. AG*,
2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024)......................................................11

*In re DraftKings Inc. Sec. Litig.*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023).....................................................................8

*Freudenberg* v. *E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................9

*Gross* v. *AT&T Inc.*,
2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021).......................................................4

*Kempen Int'l Funds* v. *Syneos Health, Inc.*,
  2025 WL 949576 (S.D.N.Y. Mar. 28, 2025) ...............................................................1, 2, 7

*Landesbank Baden-Wurttemberg* v. *Goldman, Sachs & Co.*,
  478 F. App'x 679 (2d Cir. 2012) .........................................................................................8

*Malin* v. *XL Cap. Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007) .................................................................................8

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
  982 F. Supp. 2d 277 (S.D.N.Y. 2013)..................................................................................6

*N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013)................................................................................................3

*Novak* v. *Kasaks*,
  216 F.3d 300 (2d Cir. 2000).............................................................................................3, 9

*In re Philip Servs. Corp. Sec. Litig.*,
  383 F. Supp. 2d 463 (S.D.N.Y. 2004).................................................................................3

*San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996)..................................................................................................8

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .....................................................................5

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................................................10

*Town of Davie Police Officers Ret. Sys.* v. *City of N. Miami Beach Police
  Officers' & Firefighters' Ret. Plan*,
  2021 WL 5142702 (2d Cir. Nov. 5, 2021)...........................................................................9

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022)..................................................................................5

**Rules and Statutes**

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 78u–4 & § 78u–5..........................................................................................1, 7

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Br. | Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Third Amended Complaint (ECF No. 71) |
| Class Period | Putative class period of September 9, 2020 through November 3, 2022 |
| CW | Confidential Witness |
| ELT | Executive Leadership Team |
| Ex. | Exhibits to the Declaration of Benjamin R. Walker in Support of Defendants' Motion to Dismiss the Third Amended Complaint (ECF No. 72) |
| GCS | Global Client Solutions |
| Individual Defendants | Alistair Macdonald, Michelle Keefe, Paul Colvin, and Jason Meggs |
| *Kempen II* | *Kempen Int'l Funds* v. *Syneos Health, Inc.*, 2025 WL 949576 (S.D.N.Y. Mar. 28, 2025) |
| Opposition or Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 75) |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 & 78u-5 |
| SAC | Second Amended Complaint for Violation of the Federal Securities Laws (ECF No. 57) |
| Syneos or the Company | Syneos Health, Inc. |
| TAC or Complaint | Third Amended Complaint for Violation of the Federal Securities Laws (ECF No. 67) |

When this Court dismissed Plaintiffs' *third* complaint, it gave Plaintiffs "one final chance" to plead a cognizable claim that satisfies the demanding standards of the PSLRA. *Kempen II*, 2025 WL 949576, at *3. Plaintiffs have utterly failed yet again, despite this Court's detailed repleading guidance, making crystal clear that there simply is no "viable case lurking underneath the surface." *Id.* As the Opposition lays bare, Plaintiffs' case has never been anything more than a series of stock drops in search of a fraud theory. Plaintiffs concede that those stock drops, which all occurred in 2022, resulted from then-recent developments (Opp. 27), yet Plaintiffs persist in seeking to cast Syneos' 2022 business setbacks backwards throughout the 26-month putative Class Period to try to manufacture a basis for alleging fraud. Plaintiffs' narrative simply has no basis in reality—Syneos' unchallenged financial results were actually quite strong before 2022—as demonstrated by Plaintiffs' multiple failures to satisfy their pleading burden.

The TAC is just a pared-down repackaging of Plaintiffs' two previously dismissed complaints. It addresses none of the gaping holes and factual, logical, and temporal disconnects in their prior pleadings. This action should be dismissed again, this time with prejudice.

1.    ***Plaintiffs Continue to Disregard This Court's Guidance***. This Court has twice given Plaintiffs extensive guidance regarding how to replead their claims. Plaintiffs continue to flout almost all of that guidance. The Opposition admits that the TAC's explanations for the alleged falsity of the challenged statements are largely cut-and-paste jobs, undifferentiated across the lengthy Class Period (Opp. 3 n.8), and no different from the faulty approach that Plaintiffs took in their dismissed complaints (Br. 9). And Plaintiffs flagrantly ignored this Court's instruction to plead scienter separately with respect to each alleged misstatement. Tellingly, Plaintiffs contend that Defendants argued "the Complaint makes 'no effort whatsoever to plead

scienter.'" (Opp. 5.) What Defendants actually said—and Plaintiffs do not dispute—is that "Plaintiffs make no effort whatsoever to plead scienter *separately with respect to each statement*." (Br. 9 (emphasis added).) By disingenuously mischaracterizing Defendants' argument, Plaintiffs concede Defendants' actual point.

But perhaps the most egregious example of Plaintiffs' failure to heed this Court's instructions is their continued reliance on brazen misrepresentations of the contents of the January 2021 ELT presentation partially reproduced in the TAC. The Opposition cites this presentation over and over as ostensible support for sweeping allegations of fraud (Opp. 3, 8, 9, 10, 13–16), but Plaintiffs again ignore that the presentation does not at all say what they claim it does. Plaintiffs continue to assert that the presentation shows that "Syneos was actually expecting a decline in growth for the Company's top 15 overall customers" (Opp. 3), but that is obviously false. On its face, the presentation relates to the 16 customers covered by GCS, not "the Company's top 15 overall customers," and based on the presentation, gross awards from the 11 GCS customers identified as among the Company's "Top 20 Accounts" were projected to *grow* in Clinical by almost 5% in 2021. (Br. 10.) The fact that Plaintiffs continue to rely so heavily on a plainly misrepresented document, even after the Court raised questions about their misuse of the document, confirms Plaintiffs cannot plead a viable claim. And, worse than that, despite admittedly *not* challenging Syneos' reported historical financial results (Opp. 28 n.22), Plaintiffs parade this ELT presentation as proof that Syneos was doomed to fail financially in 2021 and "was not experiencing growth" (*id.* 1, 8–9, 15), but **Syneos indisputably did grow revenues and income by over 18% in 2021**. (Br. 5–6; Ex. 22 at 2.) This is nonsense.

Plaintiffs' snub of *Kempen II* does not end there. Their explanation of the single FSP contract they claim was incorrectly accounted for in Syneos' reported backlog remains

-2-

incoherent. Although still unclear, their conclusory claim now appears to be that the entirety of this $300 million contract was included in Syneos' backlog from the beginning of 2020 until the end of the Class Period, and that $70 million more was added to backlog in each quarter of 2021 and 2022 (Opp. 17 n.14, 21 n.19), despite the fact that only the next 12 months of expected FSP contract revenue is included in backlog (TAC ¶107). Plaintiffs do not explain how any of this could be so when the January 2021 ELT presentation that they otherwise trumpet says that the same client produced $72.4 million *total* Clinical awards in 2020, and was expected to produce only $235 million overall for Clinical in 2021.[1] (Br. 11; TAC ¶79.) Plaintiffs also ignore the obvious contradiction between their allegations that (i) Syneos secured this contract in 2019, yet (ii) Syneos obtained no new business from the same client in 2019. (Br. 11.)

2. ***The TAC Fails To Plead Plaintiffs' Claims With Particularity***. Second Circuit law is clear that where, as here, a plaintiff attempts to plead securities fraud with "information and belief" allegations, the complaint must identify "source[s]—documentary or personal" for those allegations, *Batson* v. *Rim San Antonio Acquisition, LCC*, 2016 WL 6901312, at *9 (S.D.N.Y. Nov. 22, 2016), and when the source is "personal," it must be "described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged," *Novak* v. *Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).[2] The TAC, like its predecessors, fails to satisfy these requirements.

---

[1] Plaintiffs acknowledge that the notion this contract was worth $580 million by year-end 2021 is incompatible with the ELT deck, so they simply lower the value to $235 million when seeking to rewrite the content of that presentation. (TAC ¶80 & n.9.)

[2] Plaintiffs' misreading of *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463 (S.D.N.Y. 2004) (Opp. 18 n.15), is flatly inconsistent with *Novak* and a long line of controlling cases. Plaintiffs' problem is not their failure to **name** their sources, it is their failure to "describe[] [them] in the complaint with sufficient particularity" and explain the basis of their claimed information. *N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 123–24 (2d Cir. 2013).

The core allegations in the TAC remain wholly unattributed, such as the most fundamental aspects of the supposed $300 million FSP contract and an unrelated "milestone 'bonus' award" (Opp. 19, 21)—including their existence, attributes, and inclusion in backlog—and when or why any projected revenues became unachievable. (Br. Appx. A.)  To the extent any unattributed allegations supposedly derive from unspecified "confidential witnesses," Plaintiffs come nowhere close to showing—as they must—that the particular individuals "would have been in a position to know the facts relayed."  *Gross* v. *AT&T Inc.*, 2021 WL 9803956, at *6 n.14 (S.D.N.Y. Sept. 27, 2021).  Plaintiffs offer vague references to "the experiences of former Syneos employees" (Opp. 15) and "witness observations" (*id.* 26), but these "experiences" and "observations" are nowhere particularized and impermissibly remain unconnected to any Defendant or to any Syneos public statement.  *Damri* v. *LivePerson, Inc.*, 2025 WL 863322, at *10–*11 (S.D.N.Y. Mar. 19, 2025).  And this is not just lazy pleading.  It is conscious evasion of requirements designed to enable the Court to assess the reliability of dime-store novel allegations in a Complaint replete with indicia of unreliability.  *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 944 (N.D. Cal. 2010) (rejecting allegation that cancelled contracts were improperly included in backlog because "[n]one of the CWs are alleged to have discussed any such cancelled contracts with the individual Defendants").

The few documents Plaintiffs cite refute their allegations.  In addition to grossly misrepresenting the 2021 ELT deck, the Opposition repeats, without explanation, Plaintiffs' misuse of a July 10, 2021 email about Syneos' forecasting process. (Opp. 14.)  Again, this email has nothing to do with Syneos' financial results or public statements.  It concerns internal financial targets that are nowhere at issue here, and the Opposition does not contend otherwise. (Br. 14.)

Finally, the Opposition again contorts Ms. Keefe's supposed "admissions" at the conclusion of the Class Period "that the Company's operations had been in disarray for at least 18 months and Syneos lacked the technological offerings to 'be more competitive.'" (Opp. 13, 14.)  Ms. Keefe plainly did not make any such admissions (Br. 15, 18–19, Appx. B), and Plaintiffs' failure in their Opposition to contend with her actual statements—as opposed to Plaintiffs' self-serving mischaracterizations of them—essentially concedes as much.

      *3.      Plaintiffs Plead No Actionable Misstatement or Omission*.    The opening sentence of the Opposition says Plaintiffs' thesis is that it "was a lie" for Defendants to suggest "that Syneos's clinical business was healthy and growing." (Opp. 1.)  But Syneos ***did*** grow its clinical business for most of the Class Period before reporting disappointing results and lowering guidance after the second and third quarters of 2022.  (Br. 5–8.)  Plaintiffs have no answer to the chronology, so they ignore it.

      Plaintiffs do not dispute that Statements 1–11 and 18 reflect generalized statements and expressions of corporate optimism, and they make no effort to contend with the Second Circuit cases finding indistinguishable comments inactionable puffery.  (Br. 16–20, 22.)  Instead, Plaintiffs argue that Defendants' puffery is actionable because the statements supposedly were intended to "reassure" investors about particular risks.  (Opp. 8, 11, 14, 16.)  But unlike in the cases Plaintiffs cite, the TAC does not allege that Defendants' statements were made to "reassure" anyone of anything, because there was nothing to reassure anyone about.  *Cf. In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 223 (S.D.N.Y. 2022) (statements "in direct response to concerns raised by investors about a specific risk"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *12 (S.D.N.Y. Nov. 26, 2018) ("[M]any of the challenged statements regarding the strength and management of Signet's credit portfolio were made in

response to direct questions about Signet's credit portfolio . . . and in an effort to reassure the investing public about the portfolio's health.").

More importantly, Plaintiffs still have not coherently explained why any alleged misstatement was supposedly false.  They seek to distance themselves (Opp. 8) from their own claim that Syneos' truthful statements before 2022 about positive results were misleading because those results were "not sustainable" (TAC ¶¶3, 60), recognizing that the Second Circuit rejected the exact same theory in *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012).  The Opposition does nothing to bridge the irreconcilable disconnect between any other challenged statement and the allegedly contradictory internal information.  To cite just one of many examples, Plaintiffs argue that Syneos' statement that it was "Positioned for Accelerated Revenue and Margin Growth" (Statement 1) was false because "Syneos lacked basic technological tools." (Opp. 7.)  But Syneos' statement said nothing about the state of its "technological tools," and Syneos *did* grow significantly in the ensuing six quarters.  Defendants' statement that "[o]ur model, people, and culture are our competitive advantage" (Statement 3) also was not rendered false by Syneos' supposed lack of a "centralized network" and "client portal."  (Opp. 9.)  All of Plaintiffs' falsity theories suffer from similar deficiencies. (Br. 16–22.)

Plaintiffs' effort to avoid the unavoidable conclusion that Syneos' judgments as to whether and to what extent to include particular awards in backlog (Statements 12–17) constitute inactionable opinions is a diversion.  Defendants never argued, as Plaintiffs claim (Opp. 18–19), that Syneos' backlog methodology itself is an opinion, but that judgments as to whether an award meets (or no longer meets) the methodological criteria, or in what amount, are opinions.  *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 313 (S.D.N.Y. 2013) ("The final

decision of whether to take a valuation allowance against [deferred tax assets] still requires substantially subjective judgments."). Syneos made clear that its backlog and bookings reflected its "belief" about uncertain future events.[3]

Plaintiffs persist in arguing that Syneos' determination in February 2022 that certain anticipated reimbursable expenses would not be incurred means that every previous reference to backlog or bookings was misstated. (Opp. 19.) In *Kempen II*, this Court expressly rejected this faulty logic. 2025 WL 949576, at *3 (claim that "the February 2022 disclosure means that a misstatement was necessarily made at some point . . . is inconsistent with the PSLRA[]"). The same claim is no less faulty. *Accuray*, 757 F. Supp. 2d at 944 ("The fact that the backlog included later-removed contracts does not make the backlog figures false at the time they were publicly disclosed.").

**4.      *Plaintiffs Fail To Plead Scienter*.** Plaintiffs' scienter theory rests primarily on a mischaracterization of the Individual Defendants' stock trading, but those trades are not shown to be suspicious. *Chapman* v. *Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 411 (S.D.N.Y. 2020). Plaintiffs fail entirely to address that the Individual Defendants' total holdings of Syneos stock actually increased in the aggregate during the Class Period (Br. 23–24, Appx. C), precluding a "'cogent and compelling' inference of fraudulent intent" from their trading. *Avon Pension Fund* v. *GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009).

Like the TAC, the Opposition wrongly contends that "Keefe and Colvin sold all or nearly all of their shares, Macdonald sold 53% of his shares, and Meggs sold 80% of his shares."

---

[3] *E.g.*, Ex. 20 at 72 ("We believe that our backlog and net new business awards might not be consistent indicators of future revenue because they have been, and likely will continue to be, affected by a number of factors, including the variable size and duration of projects, many of which are performed over several years, and changes to the scope of work during the course of projects.").

(Opp. 23.)  Not so.  As of the first February 2022 "corrective" disclosure, the Individual Defendants owned 332,744 shares then worth $27.7 million, and Ms. Keefe and Mr. Colvin both ended the Class Period with thousands more shares.  (Br. Appx. C.)  Although Mr. Macdonald and Mr. Meggs held fewer shares at the end of the Class Period than at the start, Mr. Macdonald's holdings declined by a mere 7.5%, and Mr. Meggs' holdings declined only about 24%.  (*Id.*)  This is well within the range that courts have deemed insufficient to establish suspicious trading activity, *see*, *e.g.*, *Malin* v. *XL Cap. Ltd.*, 499 F. Supp. 2d 117, 153 (D. Conn. 2007), especially where, as here, the other Individual Defendants did not reduce their holdings, *see San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801, 814 (2d Cir. 1996).  Moreover, Plaintiffs do not contest that all but one stock sale occurred before September 4, 2021, when Syneos was indisputably growing significantly and exceeding its guidance (Br. 23), confirming the fatal disconnect between Plaintiffs' misstatement and scienter theories.

Plaintiffs also continue to point to alleged trading in Syneos stock by certain other employees and shareholders (Opp. 24), but Plaintiffs cite no case finding non-defendants' trading relevant.  Plaintiffs do not allege that these employees or shareholders were aware of any relevant contradictory facts or responsible for Syneos' statements.  *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 174 n.29 (S.D.N.Y. 2023); *Alaska Laborer Emp'rs Ret. Fund* v. *Scholastic Corp.*, 2010 WL 3910211, at *7 (S.D.N.Y. Sept. 30, 2010).

The Opposition also fails to defend Plaintiffs' scienter theory based on any speaker's alleged knowledge of facts contrary to the challenged statements.  "[A]n allegation that defendants had access to information that was inconsistent with their alleged misstatements must specifically identify the reports or statements containing this information."  *Landesbank Baden-*

*Wurttemberg* v. *Goldman, Sachs & Co.*, 478 F. App'x 679, 682 (2d Cir. 2012) (cleaned up). Recognizing that the TAC does not do so, Plaintiffs invent new allegations. Specifically, the Opposition asserts—without citation—that "Keefe and Colvin personally participated in sales calls and finance meetings during which efforts to manipulate backlog and prematurely recognize revenue were discussed." (Opp. 25.) No such allegation appears in the TAC, which makes vague reference to calls and meetings on unspecified dates concerning unspecified issues (*id.*) but does **not** allege anything about what was discussed or by whom. *Town of Davie Police Officers Ret. Sys.* v. *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 2021 WL 5142702, at \*2 (2d Cir. Nov. 5, 2021) (scienter absent because plaintiffs "fail to specifically identify the reports or statements made in connection with those meetings that contained incriminating information" (cleaned up).).[4]

The Opposition also asserts that "Defendants handed down directives to manipulate performance metrics during these meetings 'every quarter during the Class Period.'" (Opp. 25.) As support for this statement, Plaintiffs cite to TAC "¶¶71, 78" but neither paragraph actually says that. Plaintiffs rightly **removed** the unsupportable quoted language from their prior complaint. (ECF No. 57 (SAC) ¶78.)

Plaintiffs' attempt to rely on certain Individual Defendants' purported statements about their "'visibility' into the Company's pipeline" fares no better. (Opp. 25.) The allegations Plaintiffs cite for that assertion (¶¶255–262) say nothing about "visibility." The TAC alleges

---

[4] The TAC bears no resemblance to the cases Plaintiffs cite. *See Novak*, 216 F.3d at 304 (weekly reports provided to defendants describing growing inventory problem); *Akerman* v. *Arotech Corp.*, 608 F. Supp. 2d 372, 387 (E.D.N.Y. 2009) (complaint "identi[fied] specific communications through which defendants acquired the relevant knowledge"); *Freudenberg* v. *E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196–98 (S.D.N.Y. 2010) (complaint alleged "first-hand interactions with the Defendants concerning the matters alleged in the Complaint" from "sixteen CWs, who provide accounts of what they told Defendants, what Defendants knew, and/or what was discussed internally that is alleged to be contrary to Class Period statements").

that Mr. Macdonald said "that he had 'good' visibility into the backlog." (TAC ¶199.) But that is also a mischaracterization. Mr. Macdonald actually said that backlog itself provides some visibility into anticipated future revenue, not that he had visibility into the details of backlog judgments. (Ex. 16 at 7–8.) In any event, Plaintiffs do not allege that "visibility" purportedly informed any Individual Defendant about any fact Plaintiffs say contradicted some statement (*e.g.*, uncollectible contracts, future expenses that would not be incurred, etc.).

Finally, Plaintiffs fail to engage in the balancing of competing scienter inferences, as required by *Tellabs, Inc*. v. *Makor Issues & Rights, Ltd*., 551 U.S. 308, 323–24 (2007), because the temporal and logical defects in Plaintiffs' theories could never add up to the requisite strong inference of scienter. Plaintiffs admit that they challenge none of Syneos' actual financial results, and those unchallenged results show Syneos grew revenues and earnings and met its published financial guidance through year-end 2021. All but one of the stock transactions forming the centerpiece of Plaintiffs' scienter theories occurred prior to the fourth quarter of 2021. Their confidential witnesses witnessed nothing. And, a confluence of external factors in the wake of the COVID pandemic led to unforeseen declines in expected future revenues through backlog. Scienter is absent.

**5.    *Plaintiffs Cannot Plead Loss Causation*.**  Where, as here, "a plaintiff fails to plausibly and with sufficient specificity allege that any new truth was exposed to the market, he fails to plead loss causation." *Defeo* v. *IonQ, Inc*., 134 F.4th 153, 162 (4th Cir. 2025). Plaintiffs' own description of the "four loss-causing events" in 2022 flatly defeats loss causation. (Opp. 5–6, 27.) Plaintiffs nowhere contend that any "loss-causing event[]" revealed a misstatement— *e.g.*, removed offending contracts or expenses from backlog, or exposed prior non-adherence to backlog or bookings policies. Syneos' February 17, 2022 disclosures related only to a change in

judgment as to whether certain pass-through expenses included in backlog would ultimately materialize.  (Br. 6, 28.)  That conclusion in no sense corrected any prior backlog estimate or statement.  Whether the relevant truth "leak[ed] out" (Opp. 27), no disclosure revealed any prior expense estimate was false when made (Br. 22, 28), and this disclosure cannot be both a misstatement and a correction.  *Diabat* v. *Credit Suisse Grp. AG*, 2024 WL 4252502, at *150 (S.D.N.Y. Sept. 19, 2024).

Syneos' three later disclosures were also in no sense "corrective" of any prior statement. Plaintiffs concede that these disclosures revealed that Syneos' "clinical business was underperforming" ***then***, and reported "startling" quarterly results (Opp. 27), which did not correct any prior statement.  In fact, Plaintiffs nowhere contend that the challenged awards and contracts ever were reversed.  (Br. 28.)  Plaintiffs' attempt to bypass causation by reference to the size of Syneos' business downturn serves only to confirm that this lawsuit is all about a stock drop, with no credible theory of fraud or causation.

Plaintiffs protest that "mirror image" corrective disclosures are not required (Opp. 28), but the defect here is the lack of any reflection.  No disclosure "even purported to reveal some then-undisclosed *fact* with regard to the specific misrepresentations alleged." *Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013).

*          *          *

Defendants respectfully request that this Court dismiss this action with prejudice.

-11-

Dated:   New York, New York
         June 13, 2025

Respectfully submitted,

*/s/ Brian T. Frawley*
Brian T. Frawley
Benjamin R. Walker
Krystal D. Valentin
Nikko B. Price
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
frawleyb@sullcrom.com
walkerb@sullcrom.com
valentink@sullcrom.com
pricenb@sullcrom.com

*Attorneys for Defendants Syneos Health, Inc., Alistair Macdonald, Michelle Keefe, Paul Colvin, and Jason Meggs*

-13-

## S.D.N.Y. LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION

The undersigned hereby certifies pursuant to Southern District of New York Local Civil Rule 7.1(c) that the foregoing Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss the Third Amended Complaint was prepared on a computer using Microsoft Word.  The total number of words in the brief is 3,500 words, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, table of abbreviations, signature blocks, and any required certificates.

Dated:    New York, New York            */s/ Brian T. Frawley*
          June 13, 2025

                                        Brian T. Frawley
                                        SULLIVAN & CROMWELL LLP
                                        125 Broad Street
                                        New York, New York 10004
                                        (212) 558-4000

                                        *Attorney for Defendants Syneos Health, Inc., Alistair Macdonald, Michelle Keefe, Paul Colvin, and Jason Meggs*

-13-